**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

KEVIN BRIAN ELLIS,
            *Defendant-Appellant.*

No. 09-50652

D.C. No.
8:07-cr-00087-
AHS-1

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, Senior District Judge, Presiding

Argued and Submitted
March 9, 2011—Pasadena, California

Filed May 26, 2011

Before: Pamela Ann Rymer, Consuelo M. Callahan, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**COUNSEL**

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant Kevin Brian Ellis.

Robert J. Keenan, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee United States.

**OPINION**

IKUTA, Circuit Judge:

Defendant Kevin Ellis appeals his sentence for seven counts of bank robbery. He argues that his sentence must be vacated and the case remanded for resentencing because the government breached the plea agreement, the district court's decision to make an upward departure from criminal history category II to III, *see* USSG § 4A1.3, was procedurally erroneous, and the district court's overall sentence was substantively unreasonable. We hold that the government did not breach the plea agreement. Further, applying the reasoning in *United States v. Mohamed*, 459 F.3d 979, 986 (9th Cir. 2006), we hold that we review upward departures under § 4A1.3 for substantive reasonableness, not for procedural error, and conclude that the district court's sentence was substantively reasonable and any procedural error was harmless.

I

During the period from November 29, 2006 to May 3, 2007, Ellis committed seven bank robberies. Dressed in dark sunglasses, a white dress shirt, a tie, and a dark colored fedora, Ellis would approach one or two tellers and, either showing or pointing a simulated hand gun, would demand they hand over their money. In some cases, Ellis would pass the teller a note. (On February 3, 2007, for example, the note read, "I have a gun!! I will shoot you!!") Ellis would then place the money into a bag and exit the bank. During his fifth robbery, on March 6, 2007, Ellis instructed three employees to get into a closet while he exited the bank. And after the seventh robbery, on May 3, 2007, he led police on a high-speed chase, which ended with officers using a Pursuit Intervention Technique maneuver (a maneuver which forces the suspect's vehicle to abruptly turn sideways to the direction of travel). Police officers subsequently apprehended Ellis, who thereafter admitted to committing the seven robberies.

Ellis was charged in a seven-count indictment, each count relating to one of the seven bank robberies. On June 1, 2009, Ellis pleaded guilty to all seven counts pursuant to a plea agreement with the government. As explained in greater detail below, paragraph 14 of the plea agreement set forth the key terms relevant to this appeal. The parties' calculations of the base offense level and specific adjustments for the seven counts resulted in a total offense level of 29. The paragraph also stated that Ellis and the government "agree to not argue for application of any specific offense characteristic or adjustment other than those stipulated to above." The government promised not to make a motion "for an upward departure as to defendant's offense level," but reserved "the right to argue for an upward criminal history departure of up to Criminal History Category IV," and "the right under *Booker* to argue for a sentence of up to the high-end of the Guidelines range for Offense Level 29 and Criminal History Category IV," i.e., 151 months.[1]

The presentence report (PSR) noted the plea agreement's offense level calculation and provided its own, also resulting in a total offense level of 29. The PSR included details of Ellis's criminal history. Prior to the seven bank robberies at

---

[1]In full, the relevant portion of the plea deal provided as follows:

Defendant and the USAO agree to not argue for application of any specific offense characteristic or adjustment other than those stipulated to above in this Paragraph. Defendant reserves the right to argue for a downward departure under the Guidelines, and he reserves the right under *Booker* to argue for a downward "variance," that is, any sentence that he believes to be fair and reasonable. The USAO reserves the right to make all arguments in opposition to a defense motion for, or USPO recommendation of, a downward departure or variance. The USAO agrees to make no motion for an upward departure as to defendant's offense level, but it reserves the right to argue for an upward criminal history departure of up to Criminal History Category IV if standard application of the Guidelines yields a Criminal History Category of less than IV.

issue here, Ellis had been convicted of two criminal offenses. At age 16, he and another defendant used a pistol to rob two victims. Ellis was convicted of two counts of armed robbery and was sentenced to five years in state prison on each count, to be served concurrently. At age 28, he was convicted of forcible rape. According to the police report, Ellis grabbed a woman from behind, beat her with his fists, and forced the victim to have oral sex and intercourse with him. Ellis was sentenced to 75 months in state prison for this offense. In addition, the PSR indicated that Ellis had a troubled childhood and had been subject to physical and verbal abuse. It also stated that after his release from prison, Ellis became addicted to gambling and suffered economic losses which led to his bank robbery spree.

After Ellis and the government submitted a first set of briefs in response to the PSR, the government filed a supplemental sentencing brief, which Ellis claimed constituted a breach of the plea agreement. (The plea agreement, as well as the parties' sentencing briefs, are described in more detail below.) On December 14, 2009, the district court rejected Ellis's claim of breach, and exercised its discretion to impose an above-Guidelines sentence.

On appeal, Ellis argues that his sentence must be vacated for two reasons: first, the government breached the plea agreement; and second, the sentence imposed by the district court was procedurally incorrect and substantively unreasonable under 18 U.S.C. § 3553(a).

II

In order to evaluate Ellis's arguments, we must first examine how the Guidelines apply to Ellis's offenses, and the differences between the offense level calculations in the PSR and those agreed to by the parties in the plea agreement.

The calculation of the Guidelines range is a crucial first step in the sentencing process. Even though the Guidelines are

advisory, they are still the "starting point and the initial benchmark" for the sentencing process, *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)) (internal quotation marks omitted), and an appellate court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range," *Gall*, 552 U.S. at 51. If the district court makes a procedural error, then the ordinary course is to vacate and remand. *See United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 n.5 (9th Cir. 2011) (explaining that harmless error in Guidelines calculations is rare), *vacating* 621 F.3d 967 (9th Cir. 2010). "Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51.

The first step in calculating the applicable Guidelines range is to ascertain a defendant's offense level, that is, the number of points associated with his criminal activity. *See* USSG § 1B1.1(a). Ellis's plea agreement calculated his offense level as follows. Because seven separate robberies were involved, the Guidelines' instructions for grouping similar offenses were applicable, and they required the parties to start by identifying the count with the highest offense level. *Id.* §§ 3D1.2, 3D1.3. Here, the parties agreed that Ellis's most serious count was Count 5, the March 6, 2007 robbery where three employees were ordered into a closet. This count had a base offense level of 20. *See* USSG § 2B3.1(a) (setting the base offense level for robbery at 20).

After determining the base offense level, the next step under the Guidelines is to apply "any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed." *Id.* § 1B1.1(b). In the plea agreement, the parties agreed to three specific offense characteristics that

would be added to Count 5: two points for the banks' FDIC-insured status, *see id.* § 2B3.1(b)(1); two points for Ellis's physical restraint of the three bank employees by ordering them into the closet, *see id.* § 2B3.1(b)(4)(B); and three points for brandishing the simulated handgun, *see* USSG § 2B3.1(b)(2)(E). This added up to seven additional points, for a total of 27.

Next, the Guidelines require the application of any applicable adjustments. *Id.* § 1B1.1(c). The parties agreed to two adjustments to Count 5. First, the parties added the grouping adjustment described in §§ 3D1.3(a) and 3D1.4. Because there were seven separate offenses, the parties added five points to the offense level of the most serious offense (Count 5). *See id.* § 3D1.4 ("The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by . . . 5 levels [where, as here, there are more than 5 units]."). Adding five points to the 27 points calculated above adds up to a total of 32 points. The parties also agreed to a second adjustment: a reduction of three points for acceptance of responsibility. *See id.* § 3E1.1. This led to a total offense level calculation of 29 points.

The PSR's calculation of the total offense level was the same as the parties' calculation in the plea agreement, with one exception. Specifically, the PSR concluded that Count 7 (the robbery involving the high-speed chase) had the same offense level as Count 5 (which the parties had agreed was the most serious count). According to the PSR, during the robbery described in Count 7, Ellis "recklessly created a substantial risk of serious bodily injury because he drove at a high rate of speed, failed to stop at marked stop signs, drove on the opposite side of the road, and side-swiped an occupied vehicle." Therefore, the PSR determined that a 2-point upward adjustment for obstruction of justice under § 3C1.2 should apply. As a result, both Count 7 and Count 5 had an offense level calculation of 27. This change had no effect on the total

offense level calculation, because adding five points to either Count 5 or Count 7 still resulted in a total of 32 points.

Subtracting three points for acceptance of responsibility, the PSR concluded that the offense level calculation for Ellis was 29, just as the parties had stipulated in the plea agreement.

After completing this offense level calculation, a district court is authorized by the Guidelines to exercise its discretion to depart upward or downward from the applicable offense level range under certain prescribed situations. *See id.* § 5K.[2] Here the plea agreement did not address any departures to specific offense characteristics or other adjustments, and the PSR did not recommend any.

After determining the total offense level, the Guidelines next require a determination of the defendant's criminal history category pursuant to Chapter 4(A) of the Guidelines. *See id.* § 1B1.1(f). This category is determined by adding points for each qualifying prior sentence according to the instructions in § 4A1.1. Although as a general rule, "prior sentence[s]," i.e., "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense," *id.* § 4A1.2(a), are not included in a defendant's criminal history calculation when he committed the offense as a juvenile, *id.* § 4A1.2(d), or more than 15 years ago, *id.* § 4A1.2(e), the court may nonetheless consider them if it "finds that a sentence imposed outside [the 15 year] time period is evidence of similar, or serious dissimilar, criminal conduct," *id.* § 4A1.2 app. n.8. The PSR determined that Ellis's criminal history category was II, because his prior armed robbery con-

---

[2]There are two types of departures under the Guidelines. *See* USSG ch. 1, Pt. A, cmt. 4(b). The first, under § 5K, permits upward and downward departures to a specific offense characteristic or other adjustment. The second, under § 4A1.3, allows upward and downward departures to the applicable criminal history category.

viction was stale. *See id.* § 4A1.2(e)(1) ("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted."). The PSR did not recommend any departures for the criminal history category pursuant to § 4A1.3. As noted above, the plea agreement did not stipulate any criminal history category, but the government reserved the "right to argue for an upward criminal history departure of up to Criminal History Category IV."

Having pegged Ellis's total offense level at 29 and his criminal history as Category II, the PSR determined that the sentencing range was 97-121 months. Finally, the PSR recommended a 97-month sentence, at the bottom of the range. For reasons discussed below, the district court departed upward to criminal history Category III, leading to a Guidelines range of 102 to 135 months, and then further varied upwards, determining that a 151-month sentence was necessary to meet the goals of 18 U.S.C. § 3553(a).

## III

We now turn to Ellis's claim that the government breached the plea agreement through statements it made in its supplemental sentencing brief. Although the standard of review for a district court's determination on this issue is unclear, *compare United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996) (interpretation of plea agreement reviewed de novo, but whether facts demonstrate breach reviewed for clear error), *with United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) (per curiam) (de novo), we need not resolve this inconsistency here, because under either standard, the district court did not err.

**[1]** As variants of a contract, plea bargains are measured by contract law standards. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). Courts enforce the literal terms of a plea agreement, *United States v. Johnson*, 187 F.3d 1129,

1134 (9th Cir. 1999), construing ambiguities in favor of the defendant, *United States v. Quach*, 302 F.3d 1096, 1100-01 (9th Cir. 2002). The government may breach an agreement when it attempts to influence the district court "to impose a harsher sentence than the one to which the government agreed in the plea agreement to recommend." *United States v. Allen*, 434 F.3d 1166, 1175 (9th Cir. 2006) (citing *United States v. Mondragon*, 228 F.3d 978, 980-81 (9th Cir. 2000)). It may also breach an agreement when it "contradicts [a] recommendation with statements indicating a [different] preference." *United States v. Camarillo-Tello*, 236 F.3d 1024, 1027 (9th Cir. 2001). Where the government promises to abstain from making a sentencing recommendation, it may not argue that "its inadvertent breach [in making a recommendation] is immaterial," because the fact that "the breach of agreement was inadvertent does not lessen its impact," *Santobello v. New York*, 404 U.S. 257, 262 (1971).

Ellis's arguments that the government breached the plea agreement focus primarily on Section III of the "Argument" section of the government's supplemental brief, which is entitled: "*BOOKER*-BASED ARGUMENTS FOR AN UPWARD DEPARTURE." The first sentence in this section states: "Beyond the points raised in the government's initial brief, four other factors warrant an upward variance under *Booker*." The government added that "[t]he plea agreement authorizes the government to make *Booker*-based arguments in support of the 151-month sentencing recommendation."

Section III then made four arguments as to why the court should adopt the government's sentencing recommendation of 151 months "to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)." Most important here, the government first argued that "due application of the Guidelines, namely Section 3C1.2, fails to account for the fact that defendant 'recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer' after committing his last bank robbery."

This failure stemmed from the fact that "[a]s reflected in the PSR and the plea agreement, the 2-level adjustment available under Section 3C1.2 [was] applied *before* the adjustments for the 'grouping' of multiple counts of conviction." Thus did "the Section 3C1.2 adjustment applicable to the last robbery 'c[o]me out in the wash.' " Accordingly, the government argued, "[u]nder *Booker*" Ellis's "reckless endangerment support[ed] the government's sentencing recommendation."[3]

Ellis claims that the government's argument breached the government's agreement "to not argue for application of any specific offense characteristic or adjustment other than those stipulated to" in paragraph 14 of the plea agreement. Ellis points to three alleged breaches of paragraph 14: (1) the government's failure to object to the PSR's inclusion of the § 3C1.2 adjustment in its calculation of the offense level for Count 7; (2) the government's argument that "[a]s reflected in the PSR and the plea agreement, the 2-level adjustment available under Section 3C1.2 is applied *before* the adjustments for 'grouping' of multiple counts of conviction" and thus fails to account for the harm of Ellis's conduct in resisting arrest; and (3) the government's argument that § 3C1.2 does not fully account for Ellis's conduct as a basis "for an upward departure."

[2] We disagree. Notwithstanding the government's

---

[3]The government made three other arguments to support an upward variance. Specifically, it argued that after Ellis was stopped by the police, he "engaged in highly provocative conduct that posed a serious risk to police officers, bystanders, and himself." The brief also asserted that Ellis's "criminal history, offense conduct, and flagrant disregard of the lawful authority of the arresting officers demonstrate that [he] still constitutes a danger to the public," and "[t]hat fact alone justifies the government's recommendation of an above-Guidelines sentence." Finally, the government attempted to rebut Ellis's sentencing submission detailing his abusive childhood by arguing that the evidence of Ellis's psychological issues "show[s] that [Ellis] is presently a hostile and unpredictable menace to the physical safety of others."

clumsy wording in two places, in context, its sentencing brief merely urged the court to exercise its discretion under *Booker* and 18 U.S.C. § 3553(a) to impose a sentence of 151 months, an argument the government reserved the right to make. Far from arguing for any change in the offense level calculation, or suggesting that the calculation of 29 points was erroneous, the government implored the district court to vary upward from Ellis's Guidelines range on account of conduct (the high speed chase) that was not accounted for in his Guidelines calculation, due to the effect of the grouping rules.

**[3]** Specifically, the government's statement that "[a]s reflected in the PSR and the plea agreement, the 2-level adjustment available under Section 3C1.2 is applied *before* the adjustments for the 'grouping' of multiple counts of conviction," accurately explained why the grouping rules erased any effect of the two points associated with Ellis's § 3C1.2 conduct. And while the heading of Section III of the government's supplemental sentencing brief, "*BOOKER*-BASED ARGUMENTS FOR AN UPWARD DEPARTURE," used the word "departure" rather than the word "variance," its reference to "*Booker*-based arguments" and the text's reference to "an upward variance under *Booker*" indicate that the government had in mind the district court's discretion to vary from the Guidelines calculation under *Booker*. Indeed, the government even noted that "[t]he plea agreement authorizes the government to make *Booker*-based arguments in support of the 151-month sentencing recommendation." The clear import of this section was to urge the court to increase Ellis's ultimate sentence to 151 months, not to move for an upward departure in Ellis's offense level. Other than the word "departure" in the heading, nothing in the section recommends that the district court change Ellis's offense level pursuant to a Guidelines-based departure.

**[4]** Finally, the government did not breach the plea agreement by failing to object to the PSR's inclusion of the § 3C1.2 adjustment in its calculation of the offense level for Count 7.

The plea agreement did not require the government to do so, and in any event, there would have been no basis for such an argument, given that the PSR's calculation of Ellis's total offense level was the same as the plea agreement's calculation. Ellis's reliance on *Gunn v. Ignacio*, 263 F.3d 965, 971 (9th Cir. 2001), and *Mondragon*, 228 F.3d at 980-81, to support this argument is misplaced. In *Gunn*, the government and the defendant filed a written plea agreement stating that the government would not oppose the two counts running concurrently with each other. 263 F.3d at 980. The PSR recommended consecutive sentences, which added a total of 18 years to the sentence. *Id.* at 967, 971. At the sentencing hearing, the prosecutor stated that the government concurred in the recommendation of the PSR. *Id.* at 980. We held that the government breached the plea agreement, because "[f]or a prosecutor to tell a judge at sentencing that he concurs in a presentence report is an argument for sentencing in accord with the presentence report." *Id.* at 970. Here, by contrast, the government did not concur in the PSR's addition of a 2-point adjustment to Ellis's offense level for Count 7.

**[5]** Similarly, in *Mondragon*, the government agreed to make no recommendation regarding the defendant's sentence. 228 F.3d at 979. But at the sentencing hearing, it endeavored to "point out to the Court the serious nature of some of the listed offenses" in the defendant's lengthy criminal history and "that approximately 25 percent of the time the defendant's been arrested he has run or resisted and that 45 percent of the time he has failed to appear or warrants have been issued or he's had a probation violation." *Id.* Reasoning that the prosecutor's comments "did not provide the district judge with any information which he did not already have before him," we concluded that they could have been made for *only* one reason: "to influence the district court to impose a harsher sentence than that suggested by appellant's counsel." *Id.* at 980. As such, we held that the government had breached the plea agreement. *Id.* at 981. *Mondragon* is not on point, because here the government expressly reserved the right to

argue for a higher sentence; it agreed only to refrain from arguing for application of any specific offense characteristic or adjustment beyond those set forth in the plea agreement's calculation. The government did not breach this agreement, because it made no argument that the district court should increase the offense level calculation set forth in the PSR and plea agreement.

Accordingly, we reject Ellis's claim that the government breached the plea agreement.

IV

Ellis also challenges the district court's above-Guidelines 151-month sentence. As noted above, the PSR determined that the sentencing range for Ellis's offense was 97 to 121 months, and recommended a 97-month sentence. The district court explained its different analysis in its tentative ruling and during the sentencing hearing.

In its tentative ruling, the district court considered the government's motion for a 2-level upward departure in Ellis's criminal history category. The court agreed that an upward departure was warranted, but held that a 1-level departure was adequate. In reaching this conclusion, the court first referenced the Guidelines sections that authorized such a departure. It noted that under USSG § 4A1.3(a)(1), if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," an upward departure may be warranted. The court also noted that only the fifteen-year sunset provision in USSG § 4A1.2(e)(1) precluded it from imposing an additional "3 criminal history points" for Ellis's juvenile armed robbery conviction. Because the PSR's calculation of Ellis's criminal history calculation omitted this "significant, undisputed piece of defendant's record: defendant's 1982 armed robbery conviction, for which he received a 5-

year custodial sentence," and "fail[ed] to capture the brutality of defendant's 1994 [rape] offense, which defendant apparently committed as retaliation for a 'humiliat[ing]' comment made by the victim," the district court concluded that a 1-level departure to Criminal History Category III was warranted, resulting in a new sentencing range of 108 to 135 months imprisonment.

The district court then considered the statutory factors of 18 U.S.C. § 3553(a), and determined that an above-Guidelines sentence was warranted on account of Ellis's commission of seven premeditated "armed bank robberies in 7 months" with a "simulated handgun and written and verbal threats," his restraint of bank employees on one occasion, and his use of "dangerous tactics to avoid apprehension" on another. But even "[w]ithout reference to the guideline range . . . the statutory factors of § 3553(a) point to a sentence of 151 months incarceration, followed by a 5-year period of supervised release."

At the sentencing hearing, the district court reaffirmed its tentative ruling. The court stated that a 97-month sentence was not sufficient, and that even a 151-month sentence "was barely sufficient within the meaning of the law under § 3553." While noting it had considered Ellis's background, the court emphasized the "seriousness of the offenses," the need to provide "just punishment" and "adequate deterrence from criminal conduct by all and protecting the public from further crimes of this individual."

A

[6] We first consider Ellis's challenge to the district court's upward departure from Criminal History Category II to III. Although he frames this as a procedural challenge to the district court's calculation of the Guidelines range, we conclude that this is not the correct approach. In analyzing challenges to a court's upward and downward departures to a specific

offense characteristic or other adjustment under Section 5K, we do not evaluate them for procedural correctness, but rather, as part of a sentence's substantive reasonableness. *See Mohamed*, 459 F.3d at 986. In *Mohamed*, we held that "the better view is to treat the scheme of downward and upward 'departures' as essentially replaced by the requirement that judges impose a 'reasonable' sentence." *Id.* We reasoned that because "[t]he discretion that the district court judge employs in determining a reasonable sentence will necessarily take into consideration many of the factors" enumerated in the section on offense level departures, "calculat[ing] what departure would be allowable under the old mandatory scheme" and then "go[ing] through much the same exercise" to decide if the sentence was "reasonable" would be not only "redundant," but pointless. *Id.* at 986-87. Even if a district court made a procedural error in applying a departure, the court "would be free on remand to impose exactly the same sentence," which we would then review for reasonableness. *Id.* at 987. Accordingly, we decided that henceforth, we would review departures for reasonableness in the first instance and, if the sentence was reasonable, treat erroneous departures as "harmless" in light of a district court's "post-*Booker* discretion to sentence a defendant outside of the applicable guidelines range." *Id.*

**[7]** The same reasoning is equally applicable to criminal history category departures under USSG § 4A1.3. Like offense level departures, criminal history departures are entirely discretionary under the Guidelines. *See* USSG ch. 1, Pt. A, cmt. 4(b). ("When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."); § 4A1.3(a)(1) ("If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."). And as with the offense level calcu-

lations, a criminal history category departure requires the district court to consider many of the § 3553(a) factors: the risk of recidivism, *see* 18 U.S.C. § 3553(a)(2)(C); the nature of the defendant's criminal history, *see id.* § 3553(a)(1); and the nature of the offense, *see id.* For this reason, and because a court "would be free on remand to impose exactly the same sentence by exercising [its] discretion under the now-advisory guidelines," *Mohamed*, 459 F.3d at 987, it would likewise be redundant to review the criminal history departure both for procedural error and substantive unreasonableness.

**[8]** Thus, following the reasoning in *Mohamed*, we hold that where a district court "has framed its analysis in terms of a downward or upward departure" for a criminal history category, we will analyze such a departure as "an exercise of post-*Booker* discretion to sentence a defendant outside of the applicable guidelines range." *Id.* Our holding makes explicit what we implicitly held in *United States v. Tankersley*, 537 F.3d 1100, 1114 (9th Cir. 2008). In *Tankersley*, after explaining that "we do not need to consider whether the district court correctly applied the departure provision in § 5K2.0; rather we review the district court's deviation from the applicable guidelines range for reasonableness," we cited *United States v. Johnson*, 427 F.3d 423, 425-27 (7th Cir. 2005), for the proposition that it is not necessary to consider whether the district court correctly applied USSG § 4A1.3 (the provision at issue here), only whether the defendant's ultimate sentence was reasonable. *See Tankersley*, 537 F.3d at 1114.

B

We next turn to Ellis's argument that the court did not sufficiently explain its substantial deviation from the applicable advisory guideline range and also failed to address his "clinically-diagnosed gambling addiction," which he argued was the "root cause" of his bank robberies. A district court commits procedural error if it fails to provide adequate explanation for the sentence imposed. *United States v. Carty*, 520

F.3d. 984, 993 (9th Cir. 2008) (en banc) (noting that it would be procedural error for a district court to "fail adequately to explain the sentence selected, including any deviation from the Guidelines range"). Here, however, the record belies both of Ellis's claims: the district court expressly identified all of the sentencing factors it considered, along with the particular aggravating factors it found significant, namely, Ellis's commission of seven premeditated "armed bank robberies in 7 months" with a "simulated handgun and written and verbal threats," his restraint of bank employees on one occasion, and his use of "dangerous tactics to avoid apprehension" on another. And the district court required, as special conditions of supervised release, that Ellis seek treatment both for his "gambling addition," as well as his "mental health" problems, indicating that it did, in fact, consider his gambling addiction.

C

Finally, we consider Ellis's challenge to the district court's decision to impose an above-Guidelines sentence. In the absence of a "significant procedural error," this court reviews a sentence for substantive reasonableness. *Gall*, 552 U.S. at 51. "This review requires deference to the district court's decision, and should not resemble a de novo review." *United States v. Cherer*, 513 F.3d 1150, 1159-60 (9th Cir. 2008). Although "a sentence outside the Guidelines carries no presumption of unreasonableness," *Irizarry v. United States*, 553 U.S. 708, 714 (2008), the "greater the variance, the more persuasive the justification will likely be because other values reflected in § 3553(a) . . . may figure more heavily in the balance," *Carty*, 520 F.3d at 992. That does not mean the district court must "tick off each of the § 3553(a) factors to show that it has considered them." *Id.* It does, however, require that "when a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *Id.* at 992-93.

Ellis takes issue with two of the reasons underlying the district court's decision to vary upward under *Booker*: his 27-year-old (juvenile) conviction for armed robbery and the "brutality" of his 15-year-old rape conviction.

With respect to the armed robbery conviction, Ellis cites *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009), for the proposition that a "stale conviction" is more properly a reason for a "downward variance" than a sentence enhancement. *Amezcua*, however, is not on point. There, we held that it was substantively unreasonable to adhere to a Guidelines instruction to impose a full 16-level enhancement for a 25-year-old conviction when the defendant's "subsequent history show[ed] no convictions for harming others or committing other crimes." *Id.* at 1054-55. Here, by contrast, the district court cited a serious juvenile conviction for armed robbery (one that preceded a forcible rape conviction) as only one of the reasons Ellis's seven subsequent bank robberies merited an above-Guidelines sentence.

As for the rape conviction, Ellis argues that the record does not support the district court's determination that the rape was especially brutal. We disagree; while the description of the rape in the PSR is brief, we cannot say the district court's conclusion was unreasonable, or that the district court relied on "clearly erroneous facts." *Carty*, 520 F.3d. at 993. Moreover, given the overall reasonableness of the sentence, as explained below, and the district court's conclusion that even "[w]ithout reference to the guideline range" it would have imposed a sentence of 151 months, any error in relying on the rape conviction would be harmless. *See Mohamed*, 459 F.3d at 987 ("If we were to declare the sentence reasonable, then the erroneous departure would be harmless.").

**[9]** Ultimately, though, Ellis's point-by-point objections to the reasons the district court gave for "departing" upward are beside the point. The question for our purposes is whether a moderately above-Guidelines sentence for a defendant who

commits seven bank robberies, after serving prison time for rape and armed robbery, is reasonable under the broad discretion afforded the district court. *See United States v. Sylvester Norman Knows His Gun, III*, 438 F.3d 913, 918 (9th Cir. 2006). Here, the court deviated only 30 and 16 months from the high end of the PSR and its own Guidelines ranges, respectively, neither of which we would deem "major." *See Carty*, 520 F.3d at 992. We conclude that the district court's characterization of Ellis's seven armed bank robberies as "serious[ ]" offenses that traumatized their victims and its emphasis on the need to provide "just punishment," to deter criminal conduct generally, and to "protect[ ] the public from further crimes of this individual" reflected a "rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)," *United States v. Ressam*, 629 F.3d 793, 827 (9th Cir. 2010) (quoting *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009)) (internal quotation marks omitted).

**AFFIRMED.**