**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

SERGIO ALCALA-SANCHEZ,
        *Defendant-Appellant.*

No. 11-50030

D.C. No.
3:10-cr-03434-
DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
December 9, 2011—Pasadena, California

Filed January 10, 2012

Before: Dorothy W. Nelson, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

111

**COUNSEL**

Vincent J. Brunkow and Devin Burstein, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Bruce R. Castetter and Anne Kristina Perry, United States Attorney's Office, San Diego, California, for plaintiff-appellee.

**OPINION**

GOULD, Circuit Judge:

Sergio Alcala-Sanchez ("Alcala") appeals the sentence imposed after he pled guilty to being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Alcala contends that the government breached the plea agreement, notwithstanding the government's later admission that it made a mistake in its initial sentencing recommendation and its substitution of the recommendation to which Alcala and the government had agreed in the plea agreement. We have jurisdiction under 28 U.S.C. § 1291. We vacate Alcala's sentence and remand for resentencing before a different district judge.

**I**

On August 1, 2010, a Customs and Border Patrol agent saw Alcala walking along Interstate 905, about three miles north of the San Ysidro, California Port of Entry. The agent contacted Alcala. After first giving the agent a false name and date of birth, Alcala admitted that he was in the United States illegally and gave his true identity. Alcala had previously been deported from the United States.

The government filed a one-count Information charging Alcala with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b). Alcala entered into a "Fast-Track" plea agreement with the government. He pled guilty to the charge in the Information and admitted the elements of the offense. Alcala also admitted to being deported after a 1995 conviction for burglary, an aggravated felony, in violation of California Penal Code § 459.

In the plea agreement, the parties agreed that U.S. Sentencing Guidelines ("U.S.S.G.") § 2L1.2 applied, and they agreed to the following Guidelines calculations: a base offense level

of 8, an 8-level enhancement for the 1995 aggravated felony conviction, a 3-level reduction for acceptance of responsibility, and a 1-level reduction for fast-track departure. Pursuant to these calculations, the government agreed to recommend a total offense level of 12. The parties did not agree on Alcala's criminal history category, and the government could recommend a sentence at the high end of the Guidelines range.

The Probation Office filed a presentence report ("PSR"). Though the PSR recognized the parties' agreement to recommend a total offense level of 12, it calculated a total offense level of 20 and a Guidelines range of 63 to 78 months.[1] The PSR determined that Alcala's 1993 conviction for dissuading a witness by force or threat, in violation of California Penal Code § 136.1(c)(1), constituted a crime of violence. Accordingly, the PSR calculated a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). It also calculated reductions for acceptance of responsibility and fast-track departure that matched those set out in the plea agreement. The PSR recommended a sentence of 63 months, the low end of the Guidelines range.

The government then filed a sentencing summary chart repeating the PSR's calculations of an offense level of 20 and a Guidelines range of 63 to 78 months, and recommending a sentence of 78 months, at the high end of the Guidelines range.

Alcala filed a sentencing memorandum and objections to the PSR. He objected to the government's sentencing recommendation, stating, "[T]he government is bound by the terms of the plea agreement to recommend an 8-level increase, or they are in breach of the agreement. The government's recommendation should be 33 months in custody." Alcala recommended a sentence of 27 months, the low end of the Guidelines range—27 to 33 months—at a total offense level

---

[1]The PSR calculated Alcala's criminal history category as V.

of 12. He also contended that his § 136.1 conviction did not constitute a crime of violence.

The prosecutor who submitted the sentencing summary chart did not appear at the January 13, 2011 sentencing hearing. Instead, the prosecutor who had negotiated the plea agreement, appeared and stated, "I understand that there is a dispute between the parties about the guideline recommendation and what the plea agreement would call for." She added that though she had negotiated the plea, she did not submit the sentencing summary chart and was "just not comfortable making a recommendation that is different than what the sentencing assistant was going to recommend." The district court continued the sentencing hearing to the next week.

At the continued hearing, the prosecutor who made the sentencing recommendation appeared and began by "apologiz[-ing] profusely" to the district court and to defense counsel. She said, "I read through the presentence report more carefully, I think, than I did the plea agreement." The prosecutor continued, "I recognize that the probation department determined that the defendant was guilty of a crime that would result in a plus 16; however, it is the position of our office that the defendant is entitled to the benefit of his bargain." She then reported the government's corrected Guidelines calculations to the district court: a criminal history category of V, an adjusted offense level of 12, and a Guidelines range of 27 to 33 months. Consistent with the plea agreement, she then recommended a 33-month sentence.

Defense counsel reasserted the position that the government had breached the plea agreement. The prosecutor who filed the sentencing summary chart responded on behalf of the government:

> This is what happens when these cases get handed from person to person to person, Your Honor. I know that I did not put the time and energy into

researching the issue of the plus eight versus plus 16 as was put into by [the parties].

I must assume that it was the position of this case, and our office on this case, at the time it was submitted with the P.S.R. that the plus eight was appropriate. I have no problem standing by that.

The district court then confirmed that the government meant to "withdraw the sentencing summary chart that [it] initially filed," "stand by the plea agreement," "argue that the [§] 136.1[conviction] is a plus eight, not a plus 16," and "urge the court to sentence Mr. Alcala within the 27 to 33 month range." Defense counsel acknowledged the government's attempt to "mitigate the damage caused by the breach" and said that she "believed this really was just a mistake." But defense counsel continued to maintain the argument that the government had breached the plea agreement, urging, "I am not sure you can unring that bell. . . . All of [what has happened] has now become part of [the district court's] sentencing calculus, for better or worse." The assigned prosecutor again apologized and stressed that she "made a mistake." She also noted the "overwhelming number of cases that [she] personally ha[d]."

The district court concluded that the government had not breached the plea agreement. The district court accepted the government's representations that Alcala's § 136.1 conviction was a plus 8 and that the government was requesting a sentence within the 27- to 33-month range set forth in the plea agreement, but stated that it had an independent obligation to calculate the correct Guidelines range and arrive at a just and fair sentence under 18 U.S.C. § 3553(a). The district court concluded that Alcala's § 136.1 conviction was a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii), a plus 16, and it calculated the Guidelines range as 63 to 78 months. After hearing argument on the § 3553(a) factors, the district court

departed downward from the Guidelines range and sentenced Alcala to 48 months.

## II

We have not been entirely consistent in our standards for reviewing a claim that the government breached a plea agreement. *United States v. Ellis*, 641 F.3d 411, 417 (9th Cir. 2011); *United States v. Mondragon*, 228 F.3d 978, 979-80 (9th Cir. 2000). *Compare, e.g.*, *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) (de novo standard), *with United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996) (clearly erroneous standard).

Because the district court clearly erred in determining that the government did not breach the plea agreement, the result is the same under either standard, so we need not resolve the inconsistency here. *See Ellis*, 641 F.3d at 417.

## III

Alcala contends that the government breached the plea agreement and that the appropriate remedy is remand for resentencing before a different judge. We agree.

**[1]** "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). A plea agreement is a contract, and the government is held to its literal terms. *Mondragon*, 228 F.3d at 980. Requiring the government to strictly comply with the terms of a plea agreement encourages plea bargaining, "an essential component of the administration of justice," *Santobello*, 404 U.S. at 260, because it ensures that a defendant gets the benefit of his or her bargain—the presentation of a "united front" to the court. *See United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001).

It does not matter that a breach is inadvertent, *see Santobello*, 404 U.S. at 262, or "that the statements or arguments the prosecutor makes in breach of the agreement do not influence the sentencing judge." *Gunn v. Ignacio*, 263 F.3d 965, 969-70 (9th Cir. 2001).

In *Santobello*, the State agreed in the plea agreement to make no recommendation as to the sentence. 404 U.S. at 258. Months later, at the sentencing hearing, a new prosecutor replaced the prosecutor that had negotiated the plea. *Id.* at 259. The new prosecutor recommended the maximum sentence. *Id.* Over defense counsel's objection, the sentencing judge stated, "I am not at all influenced by what the District Attorney says," and imposed the maximum sentence. *Id.* at 259-60. The United States Supreme Court, despite stating it had "no reason to doubt" the sentencing judge's assertion that the prosecutor's recommendation did not influence him, vacated the judgment and remanded the case. *Id.* at 262-63. The Court stated, "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." *Id.* at 262.

**[2]** In this case, which in material respects is similar to *Santobello*, the government breached the literal terms of the plea agreement. *See Mondragon*, 228 F.3d at 980. It promised to recommend a total offense level of 12 and no more than a 33-month sentence and instead submitted a sentencing summary chart recommending a total offense level of 20 and a 78-month sentence. This did not present a "united front" to the court. *See Camarillo-Tello*, 236 F.3d at 1028. It does not matter that the breach was inadvertent, caused by a heavy workload for government lawyers, or the result of "cases get[ting] handed from person to person" at the U.S. Attorney's Office. *See Santobello*, 404 U.S. at 262. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." *Id.* The district court clearly erred in holding that no breach occurred.

**[3]** Here, unlike in *Santobello*, the government admitted its mistake and recommended the agreed-upon sentence before the district court sentenced Alcala. But we conclude that the government's later actions did not cure its earlier breach. Alcala had lost the benefit of his bargain that contemplated that the government would present a united front with him in recommending a total offense level of 12 and a 33-month sentence. Although the government in the end gave the court the correct recommendation stating that Alcala deserved the benefit of his bargain, the district court might well have thought from the government's initial submission and its qualified statements in open court that it truly thought Alcala deserved more but it was required to assent to the plea agreement provision. Because the district court has an independent duty and freedom in rendering sentence, the harm to Alcala from the government's initial breach and subsequent attempt to cure it is not calculable.

The government's breach was no mere slip of the tongue or typographical error. The government not only recommended a higher Guidelines range than the range set forth in the plea agreement, but also recommended a high-end Guidelines sentence that was higher than the sentence recommended in the PSR. The government did not quickly change its position after Alcala, ten days before the first sentencing hearing, filed his sentencing memorandum contending that the plea agreement obligated the government to recommend an 8-level enhancement and a 33-month sentence or else be "in breach." Thereafter, at the first sentencing hearing, the government did not retract its sentencing recommendation, despite the fact that the prosecutor who had negotiated the plea agreement appeared for the government. And at the second sentencing hearing, rather than take an unequivocal position from the outset that a plus-8 rather than a plus-16 enhancement was appropriate, the prosecutor who submitted the sentencing summary chart attributed her mistake to "cases get[ting] handed from person to person" and said that she would stand by the plus 8 but could not give "a more detailed explanation

of what our position is with regard to . . . a plus 16." These equivocations left room for doubt about the government's position on the issue.

**[4]** The prosecutor who made the sentencing recommendation admitted her mistake and eventually urged the district court to adopt a 33-month sentence based on a plus-8 enhancement as promised. But at that late stage, the breach, however inadvertent, could not be undone. *See Santobello*, 404 U.S. at 262 ("[A]t this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial."); *see also United States v. Kurkculer*, 918 F.2d 295, 302 (1st Cir. 1990) ("The Court in *Santobello* nowhere suggested that a mere withdrawal of the offending recommendation with substitution of the agreed recommendation would have been a sufficient remedy.").

**[5]** That the government changed its recommendation before the district court sentenced Alcala does not change our conclusion. As explained above, in these circumstances one really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge. Equally important, under *Santobello* and our precedent, the argued impact on the sentencing judge, when there is a breach of a plea agreement by making an erroneous sentencing recommendation and subsequent correction, is irrelevant. *See Santobello*, 404 U.S. at 262; *Gunn*, 263 F.3d at 969-70; *Mondragon*, 228 F.3d at 981. "The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement." *Mondragon*, 228 F.3d at 981. To excuse plea agreement breaches in light of later attempted mitigation would lessen the government's duty of strict compliance.

**[6]** Here, the government breached the plea agreement, so we must vacate Alcala's sentence and give Alcala the benefit of his bargain, specific performance of the plea agreement. We remand for resentencing before a different district judge

to eliminate impact of the government's prior mistake and breach. *See Santobello*, 404 U.S. at 263; *Mondragon*, 228 F.3d at 981.**[2]**

**Alcala's sentence is VACATED and the case REMANDED for resentencing before a different judge.**

---

**[2]**As we said in *United States v. Johnson*, "We remand to a different judge for re-sentencing because the case law requires us to do so. We intend no criticism of the district judge by this action, and none should be inferred." 187 F.3d 1129, 1136 n.7 (9th Cir. 1999).