NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 15 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50048 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00344-DSF-1 |
| v. | |
| MARK WILFRED TAMARIN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Submitted April 13, 2021**
Pasadena, California

Before: M. SMITH and IKUTA, Circuit Judges, and VRATIL,*** District Judge.

Defendant-Appellant Mark Wilfred Tamarin (Tamarin) appeals his 71-month

custodial sentence arising from his conviction on six counts of wire fraud,

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

18 U.S.C. § 1343, and one count of attempted health care fraud, 18 U.S.C. § 1347, relating to a scheme to defraud Medicare. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.

We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review the district court's interpretation of the Guidelines issued by the United Sentencing Commission (Guidelines) *de novo*, application of the Guidelines to the facts for abuse of discretion, and factual findings for clear error. *United States v. Staten*, 466 F.3d 708, 713 (9th Cir. 2006). We affirm.

1. Tamarin argues that the district court erred by applying a 14-level enhancement for loss because the intended loss amount found by the district court was not supported by clear and convincing evidence. Specifically, Tamarin argues that the loss attributable to the fraudulent post-void residuals (PVRs) and renal ultrasounds was based on "speculation and conjecture" and that the intended loss should be reduced to the amounts actually paid by Medicare rather than the amounts billed to Medicare.

The Guidelines define intended loss as "the pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1(b)(1), comment. n.3(A)(ii). The Guidelines provide that the "court need only make a reasonable estimate of the loss," a determination that "is entitled to appropriate deference." U.S.S.G. § 2B1.1(b)(1),

2

comment. n.3(C); *see also United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008).

With respect to the evidence presented at trial, Advanced Urology Medical Office (AUMO) employees testified that Tamarin ordered more PVRs and renal ultrasounds than any other doctor in the practice, even ordering them without seeing the patient and announcing that a particular day was "PVR day." In addition, summary charts introduced at trial corroborated this testimony, demonstrating that Tamarin ordered significantly more PVRs and renal ultrasounds than his partners.

To calculate the loss amount, the district court agreed with the government's method that compared Tamarin's PVR and renal ultrasound billing to that of his partner at AUMO who billed the next highest amount for these tests, the difference being the fraudulent amount. This calculation was reasonable because all four AUMO partners saw a similar patient population, and the partner with whom Tamarin's billing was compared, actually saw more patients in the office than Tamarin did.

Tamarin argues that the calculation was improper because it did not consider potential differences between Tamarin's medical practice and other physicians in his medical group. Tamarin contends these differences could be the percentage of Medicare patients seen by each physician as well as the types of insurance accepted.

Therefore, Tamarin argues, calculation of the loss amount based on such a comparison is speculative and based on conjecture.

However, Tamarin offered no evidence showing any differences that would justify the amount he billed—which was double-to-triple the amount of his colleagues. While Tamarin speculates that there "could be" differences in Medicare patients, this does not suggest the district court's inclusion of the loss stemming from the fraudulent PVRs and renal ultrasounds was illogical, implausible, or without support in the record. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Therefore, the district court did not clearly err by concluding the government's method of calculating loss was reasonable.

With respect to Tamarin's argument that the intended loss should be reduced to the amounts paid by Medicare rather than the amounts billed to Medicare, Tamarin relies on *United States v. Popov*, 742 F.3d 911 (9th Cir. 2014) and *United States v. Moran*, 778 F.3d 942 (11th Cir. 2015). This argument fails for two reasons.

First, the Guidelines provide that "the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute *prima facie* evidence of the amount of intended loss." U.S.S.G. § 2B1.1, comment. n.3(F)(viii). Here, the district court found that the government proved by clear and convincing

evidence that the billed amount was $723,655.99, which provides *prima facie* evidence exceeding the $550,000 threshold for the 14-level enhancement.

Second, unlike the defendants in *Popov* and *Moran*, Tamarin introduced no evidence supporting his claim that he intended to be paid less than the amounts billed to Medicare. Importantly, Tamarin offered no documents or testimony regarding his understanding as to Medicare reimbursement amounts. Instead, Tamarin's attorney argued that "because of his many years of experience dealing with Medicare billing, [Tamarin] was aware that Medicare did not pay the amount billed for medical services." These attorney arguments without supporting evidence are insufficient to rebut the *prima facie* showing. Therefore, the district court did not err when it agreed with the government and Probation Office and overruled Tamarin's objections to the loss calculations.

Accordingly, the district court did not clearly err in applying a 14-level enhancement for loss because the intended loss amount found by the district court was supported by clear and convincing evidence in the record.

2.    Tamarin next argues that the district court erred by applying a two-level enhancement for obstruction of justice. The Guidelines provide for a two-level enhancement if "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1.

An example of conduct covered by this Guideline is "providing materially false information to a judge." U.S.S.G. § 3C1.1, comment. n.4(F). "For perjury to be deemed obstruction, the district court must find that: '(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent.'" *United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014) (citation omitted). The district court made factual findings with respect to each of these elements and did not clearly err in those findings.

With respect to false testimony, the district court found that Tamarin testified falsely when:

- He testified that "he saw all of the patients that were reflected in his patient notes";

- "He provided obviously false explanations for such obvious errors as mistaking the gender of a patient and failing to document obvious changes in a patient's medical history";

- "He claimed to have seen patients for amounts of time that . . . exceeded . . . 24 hours in a day"; and

- "He claim[ed] to have seen patients at one location when he was obviously at another location."

With respect to materiality, the district court found that Tamarin's testimony on each of these subjects was "material" because "he would not have been found

6

guilty if the jury had believed him."

With respect to intent, Tamarin contends he did not act willfully, instead that he had the "good faith belief that he made all of the patient visits at issue." The district court considered and rejected this contention, finding instead that Tamarin testified with "willful intent" in that he "carefully crafted much of his false testimony in an attempt to convince the jury that he had performed medically necessary services when that was not the case."

These detailed factual findings regarding Tamarin's false testimony, which the district court observed during trial, were supported by the trial record and were therefore not clearly erroneous.

3. Tamarin also argues the district court erred by denying him a downward variance such that his sentence was unreasonable under 18 U.S.C. § 3553(a). We review the substantive reasonableness of a sentence under a highly deferential abuse-of-discretion standard that "should not resemble a de novo review," *United States v. Ellis*, 641 F.3d 411, 422 (9th Cir. 2011) (citation omitted), and "will provide relief only in rare cases," *United States v. Christensen*, 828 F.3d 763, 819 (9th Cir. 2015) (citation omitted). We reverse only if, "upon reviewing the record, we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *United States v. Ressam*, 679 F.3d 1069, 1087 (9th Cir. 2012) (en banc) (citation omitted).

Whether a sentence is substantively reasonable depends on the totality of the circumstances, and a within-Guidelines sentence will "usually be reasonable." *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (citation omitted).

The district court concluded that Tamarin's high-end, within-Guidelines custodial sentence of 71 months was appropriate after making an "individualized determination based on the facts," including "the nature and circumstances of the offense and the history and characteristics of the defendant[,] the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and provide just punishment, and to afford adequate deterrence for criminal conduct." Tamarin contends that the district court ignored various factors when imposing his sentence, such as his lack of criminal history, serious health issues and age, and the probable loss of his medical license and resulting financial ruin.

The district court properly considered and rejected Tamarin's contention that his history and characteristics were mitigating, instead pointing to Tamarin's threats to potential witnesses, the accusations he levied against others during his testimony, his failure to comply with the Probation Office, and his attempts to keep assets away from his creditors.

In response to Tamarin's claim that his health merited a variance, the district court concluded that the Bureau of Prisons was "well able to handle all of [Tamarin's] various ailments" because these ailments had not been so severe as to

prevent him from practicing medicine and required him to take only limited medications. With respect to Tamarin's lack of criminal history, the district court concluded a variance was not warranted because his conduct was aggravating in that Tamarin "engaged in obviously fraudulent conduct for a number of years, openly scoffing at his partners who did not take the opportunity to do the same." Also aggravating Tamarin's crime, according to the district court, was his abuse of the trust placed in him by Medicare and his "attitude concerning his own conduct and toward those he harmed." Finally, the district court concluded that Tamarin being barred from practicing medicine did not warrant a variance because it was the "natural consequence of this egregious abuse of his medical license and the trust placed in him by the Medicare system."

Accordingly, the district court properly considered each of the sentencing factors and did not abuse its discretion by sentencing Tamarin to a high-end Guidelines sentence of 71 months.

**AFFIRMED.**