**Deon GUNN, Petitioner–Appellant,**

v.

**John IGNACIO, Frankie Sue Del Papa, Respondents–Appellees.**

No. 99–16186.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 2000

Filed Aug. 30, 2001

Danice Arbor Johnson, Assistant Federal Public Defender, Las Vegas, Nevada, for the appellant.

Aimee E. Banales, Deputy Attorney General, Carson City, Nevada, for the appellees.

Before: KLEINFELD, HAWKINS, and TALLMAN, Circuit Judges.

KLEINFELD, Circuit Judge:

This is a petition for a writ of habeas corpus from a state conviction. The issues relate to whether a prosecutor breached a plea agreement.

### Facts

Gunn mugged two women, on two separate occasions, using a gun each time. He was charged in state court with two counts of robbery [1] with use of a deadly weapon [2] and numerous other crimes. Gunn, his lawyer, and the prosecutor agreed on a guilty plea to the two muggings.

The parties articulated the agreement on several occasions. Gunn waived indict-

---

**1.** N.R.S. § 200.380.

**2.** N.R.S. § 193.165.

ment and preliminary hearing, consenting to be charged by information. At the hearing on this waiver, his lawyer and the prosecutor agreed that

> the defendant will plead to Counts III and V. That is robbery with a deadly weapon. The defendant understands that he will be sentenced to consecutive terms with the robbery and the "with use [of a deadly weapon]," but the state has agreed that both counts can run concurrently with one another.[3]

What the lawyers meant, as became clear in later discussions of the plea agreement, was that Gunn would serve time for the two robbery charges concurrently and then, consecutively to the robbery time, serve time for the two deadly weapons charges concurrently.

At Gunn's arraignment three weeks later, the prosecutor said "we are not opposing concurrent sentences between the two counts" but "any time he receives for the 'with use' is to run consecutive to the times [for the robberies]." The prosecutor added that the potential statutory maximums were fifteen years on each of the four charges, for a total of sixty years.

Asked if he had any questions, Gunn asked the judge what "concurrent" meant. The judge answered that it was mandatory that his use of a weapon sentence be identical to the robbery sentence, and consecutive to it, so if he was sentenced to ten years on each, consecutively, he would be sentenced to twenty years on the two. Gunn asked, "so both charges that I'm pleading to are running concurrent?" The prosecutor agreed that "we are not opposing concurrent," so "he would still be looking at the upper end of one to fifteen, plus one to fifteen." The judge explained that because the two muggings would be sentenced concurrently, if he got ten years for each robbery, and ten years for each use

of a weapon, "it would be a maximum of twenty years, not forty." Then Gunn said he understood and pleaded guilty to the four counts.

The parties filed a written plea agreement a couple of weeks later, saying "[t]he State will not oppose the running of Counts III and V being concurrent to each other." Each of the counts charged robbery with a deadly weapon. At the hearing when the plea agreement was filed, the prosecutor similarly explained what it meant: "in this case it could potentially be sixty years even though the state's negotiation would effectively argue for no more than thirty years." The plea bargain did not guarantee Gunn any particular sentence and left the judge free to impose a harsher sentence than the prosecutor would recommend.

The presentence report was damning. Gunn and another man had robbed eight grocery stores, pointing a gun each time at the cashier, and tried to rob a ninth. And he had a substantial record of other serious prior offenses. The presentence report accurately noted that the plea bargain provided that "[t]he State will not oppose concurrent sentences," but recommended consecutive sentences of nine years on each count, for a total of thirty-six years.

At the sentencing hearing, the court asked the state's position. The prosecutor, new to the case, said "we did not oppose running Count V and Count III concurrently. However, your honor, in light of the probation officer, the state would concur in the—." The judge then stopped the prosecutor, "Because I don't want you to make a recommendation that is contrary to negotiations.... Before you blurt something out that is going to taint this thing, you might take a good look at it."

---

**3.** The lawyers on appeal are not the lawyers who were involved below.

Oddly, the prosecutor did not follow the judge's advice to "take a good look" at the written plea agreement before blurting something out. Instead, he blurted: "Your honor, to be on the safe side, having looked at the recommendation of probation and parole, we will concur in that." That is, the prosecutor concurred in the recommendation that Gunn receive four consecutive sentences of nine years, a total of thirty-six years, instead of two concurrent nine-year sentences consecutive to two more concurrent nine-year sentences, a total of eighteen years—which is what the prosecutor had agreed not to oppose. The judge reminded the prosecutor that it was not appropriate to agree to recommend three and three and then recommend nine and nine (the judge was confusing Gunn's plea bargain with his codefendant's) and asked him to repeat whether "you are recommending that which the Department of Parole and Probation recommends." The prosecutor responded "Yes, your honor."

Gunn's lawyer asked the judge to impose pairs of three-year concurrent sentences, which would run consecutively, for a total of six years. She failed to point out that the prosecutor had violated the plea agreement that "the State will not oppose the running of Counts III and V concurrent to each other." Instead she argued that Gunn was "really a decent person" who had been taken over by drugs which he had now shaken, and "the one thing, I guess, that can be said in his favor is that no one was injured, and thank God for that."

The judge then imposed four consecutive nine-year sentences. Defense counsel still did not object on the basis of the plea agreement. She argued only that the judge should waive restitution.

The Nevada Supreme Court held that Gunn was not entitled to withdraw his guilty plea on account of breach because the plea agreement provided that "the sentencing judge was not bound by the terms of the plea agreement or the state's recommendation of concurrent sentences." As for the prosecutor's breach of the agreement not to oppose concurrent sentences, the Nevada Supreme Court held:

> While the state did concur with the recommendation in the presentence report, it is clear from the record that the state only concurred with the recommendation of imposing nine-year sentences, which the state was free to do. The state further indicated that it would not oppose concurrent sentences, consistent with the plea agreement. Thus, appellant's contention that the state breached the plea agreement is without merit. We therefore conclude that the district court did not err in denying appellant's motion to withdraw his guilty plea.

The court did not cite or discuss the United States Supreme Court's decision in *Santobello v. New York*.[4] Regarding Gunn's ineffective assistance of counsel claim, asserted in a later petition, the state court held that it was filed almost a year late, without any explanation for the delay.

### Analysis

Gunn exhausted his state remedies and petitioned the district court for a writ of habeas corpus.[5] A certificate of appealability was granted as to two issues, whether the prosecutor breached the plea agreement and whether Gunn's attorney rendered ineffective assistance of counsel by failing to object to that prosecutorial misconduct. We conclude that he is entitled to relief on account of the prosecutor's breach, so we do not reach the ineffective assistance issue.

---

**4.** 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**5.** *See* 28 U.S.C. § 2254(a).

■ We review the district court's denial of a writ of habeas corpus de novo.[6] Our review of the highest state court's decision is deferential. The writ must be denied "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]

■ The statutory term "unreasonable" means more than that the state court decision was incorrect; "some erroneous applications may nonetheless be reasonable."[8] We read the term to require "clear error" by the state court, such that we have a " 'definite and firm conviction' that an error has been committed." This is comparable to the tests we use to grant mandamus petitions or the kind of clear error that allows departure from law of the case.[9] Thus,

we must reverse a state court's decision as involving an "unreasonable application" of clearly established federal law when our independent review of the legal question does not merely allow us ultimately to conclude that the petitioner has the better of two reasonable legal arguments, but rather leaves us with a "firm conviction" that one answer, the one rejected by the court, was correct

and the other, the application of the federal law that the court adopted, was erroneous.[10]

Likewise, we read the "unreasonable determination of the facts" criterion to require "more than mere incorrectness," such that the state court's fact finding is so "clearly erroneous" as to leave us with a "firm conviction" that its determination was mistaken on the evidence before it.[11] It can be difficult to classify an analysis as an "unreasonable application" of federal law as determined by the Supreme Court, or alternatively as an "unreasonable determination of the facts" bearing on that application. But because we use the same deferential "clearly erroneous" standard for both determinations, "if we are wrong" in this classification, sometimes "it makes no difference."[12]

■ We begin the analysis by identifying the "clearly established Federal law, as determined by the Supreme Court of the United States."[13] It is undisputed that *Santobello* controls. In that case, the prosecutor agreed to make no recommendation as to sentence, and then made one.[14] The sentencing judge said it made no difference that the plea agreement was breached, because he would have imposed the same sentence anyway.[15] Nonetheless, the Supreme Court held that a promise that in any degree induces a plea "must be fulfilled."[16] It does not matter whether the breach is inadvertent.[17] And it does not matter that the statements or argu-

6. *Bribiesca v. Galaza,* 215 F.3d 1015, 1018 (9th Cir.2000).

7. 28 U.S.C. § 2254(d).

8. *Van Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.2000).

9. *Id.* at 1153 (quotation omitted).

10. *Id.* at 1153–54.

11. *Torres v. Prunty,* 223 F.3d 1103, 1107–1108 (9th Cir.2000).

12. *Id.* at 1107.

13. 28 U.S.C. § 2254(d)(1).

14. *Id.* at 258–259, 92 S.Ct. 495.

15. *Id.* at 259–260, 92 S.Ct. 495.

16. *Id.* at 262, 92 S.Ct. 495.

17. *Id.*

ments the prosecutor makes in breach of the agreement do not influence the sentencing judge.[18] To determine if a plea agreement has been broken, courts consider what was "reasonably understood by (defendant) when he entered his plea of guilty." [19]

On the record that is before us and was before the state court, there can be no question what the agreement was and what Gunn reasonably understood it to be, particularly in light of Gunn's own questions to the judge at the time about what "concurrent" meant. It was perfectly clear that he was going to plead to two robberies with a gun, that the weapons enhancement would for each robbery be consecutive to the robbery sentence, and that the prosecutor would not oppose concurrent sentences for the two robberies and the two enhancements.

The written version of the plea agreement said "[t]he State will not oppose the running of Counts III and V being concurrent to each other." The Nevada Supreme Court so found: "the state agreed not to oppose concurrent sentences." No one disputes that this agreement was part of the inducement for the guilty plea.

The issue is whether the prosecutor breached the agreement. The Nevada Supreme Court concluded that he did not, because "[t]he state further indicated that it would not oppose concurrent sentences, consistent with the plea agreement." The question determinative of the outcome of this case is whether that determination is an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [20]

We have the evidence presented in the state court proceeding in the record before us. We have searched with great care for any words in the sentencing hearing that support the determination that the "state further indicated that it would not oppose concurrent sentences." We cannot find any.

The state's brief quotes the prosecutor as saying "we are not opposing that the counts, the two counts, run concurrent." But that was at the hearing when Gunn agreed to change his plea from not guilty to guilty, and this statement was not repeated at the sentencing hearing. The state's brief says "the state never argued for consecutive sentences," which is true, but not the same thing as not opposing concurrent sentences. The state did not have to argue for consecutive sentences in order to get them, because the presentence report made that argument. Gunn had bargained for nonopposition to concurrent sentences, yet at sentencing, the prosecutor never said "consistent with the plea agreement, we do not oppose concurrent sentences."

Instead, the prosecutor said at sentencing that it concurred in the "recommendation of probation and parole," which was for consecutive sentences. For a prosecutor to tell a judge at sentencing that he concurs in a presentence report is an argument for sentencing in accord with the presentence report. When a lawyer says at sentencing "we concur with the presentence report," he concisely states an argument from authority. The statement means, as a practical matter, "Your honor, you should sentence this defendant to X, not just because I say so, but because the objective and experienced arm of the court, the probation and parole office, so recommends."

---

**18.** *Id.*

**19.** *See United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979) (quoting *United States v. Crusco,* 536 F.2d 21, 27 (3d Cir.1976)).

**20.** 28 U.S.C. § 2254(d)(2).

Here, the prosecutor promised not to oppose concurrent sentences, but then concurred in a presentence report that did oppose concurrent sentences—which amounts to the prosecutor opposing concurrent sentences. He could have concurred in the report in other respects but stated that, pursuant to the plea agreement, the state did not oppose concurrent sentences, but he did not make that reservation in his total concurrence in the presentence report.

The difference between concurrent and consecutive in this case is the difference between 18 years in prison and 36 years in prison. It was potentially the difference between 30 years and 60 years.[21] There can be no doubt that it mattered to Gunn when he agreed to the plea bargain. The evidence is a written record so clear that it leaves us with a "firm conviction" that an error was made,[22] that is, that there was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[23]

■ Our deferential review of state court determinations under the Antiterrorism and Effective Death Penalty Act (AEDPA) is not equivalent to no review.[24]

The Third Circuit has considered a *Santobello* problem in a habeas petition from a state court conviction in the wake of *Williams v. Taylor.*[25] In *Dunn v. Colleran*, it reached a conclusion similar to ours on facts less compelling.[26] There, the prosecutor agreed to recommend a minimum sentence but actually recommended a "lengthy" sentence, leaving room for argument about whether the minimum was in fact lengthy.[27] Nevertheless, the Third Circuit concluded that the state court determination fell outside the broad range of AEDPA deference because of the compelling force of *Santobello.*[28] We have frequently, in the context of habeas corpus before AEDPA, and on direct review, vacated sentences where the government breached a plea agreement.[29]

■ On direct review, "[w]here the government violates a plea agreement at sentencing, the usual remedy is a remand for resentencing."[30] On petitions for a writ of habeas corpus, we require no more of the state than we require of district courts, that resentencing be available where the plea agreement regarding sentence was breached, but we do not constrain the state's determination of how to formulate the relief.[31]

---

21. N.R.S. §§ 200.380, 193.165.

22. *Torres v. Prunty,* 223 F.3d 1103, 1108 (9th Cir.2000).

23. 28 U.S.C. § 2254(d)(2).

24. *See Van Tran v. Lindsey,* 212 F.3d 1143, 1152–53 (9th Cir.2000).

25. 529 U.S. 362, 375, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

26. 247 F.3d 450, 459–461 (3d Cir.2001).

27. *Id.* at 459–461.

28. *Id.* at 461.

29. *See, e.g., United States v. De la Fuente,* 8 F.3d 1333, 1341 (9th Cir.1993) (affirming correction of sentence under 28 U.S.C. § 2255

motion to vacate); *United States v. Camper,* 66 F.3d 229, 233 (9th Cir.1995) (vacating sentence on direct review); *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984) (same).

30. *Travis,* 735 F.2d at 1132. *See also United States v. Mondragon,* 228 F.3d 978, 981 (9th Cir.2000); *United States v. Nelson,* 222 F.3d 545, 549 (9th Cir.2000); *United States v. Johnson,* 187 F.3d 1129, 1136 (9th Cir.1999); *Camper,* 66 F.3d at 230–31; *United States v. Fagan,* 996 F.2d 1009, 1014 (9th Cir.1993); *United States v. Fisch,* 863 F.2d 690, 690–91 (9th Cir.1988).

31. *See, e.g., Pierre v. Thompson,* 666 F.2d 424, 427 (9th Cir.1982) (holding that district court "properly determined that it was within the

### Conclusion

We **REVERSE** the determination of the district court, and direct that the petition be granted. When issued, the writ should command that the judgment is **VACATED** so that Gunn may be resentenced within a reasonable time or granted such other relief as the state court may deem appropriate in light of the breach of the plea agreement

**PETITION GRANTED.**

state court's discretion" to determine the remedy for a broken plea agreement).