Jerry Dean **MCCOY,** Petitioner–Appellee,

v.

Terry **STEWART;** Grant **Woods,** Respondents–Appellants.

No. 01–15700.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 2001.

Filed Feb. 26, 2002.

---

Janet Napolitano, Attorney General; Randall M. Howe, Chief Counsel, Criminal Appeals Section; Ginger Jarvis (argued), Assistant Attorney General, Criminal Appeals Section, Phoenix, AZ, for the appellants.

T.S. Hartzell (argued), Tucson, AZ, for the appellee.

Before POLITZ,* KOZINSKI, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

We must decide whether words spoken by an admitted former member of a California gang to a group of Arizona gang members could properly be punished by state law or, instead, fell within the protective ambit of the First Amendment.

## I

Jerry Dean McCoy was indicted in Arizona Superior Court on one count of participating in a criminal street gang in violation of A.R.S. § 13–2308,[1] a class 2 felony. The prosecution alleged that McCoy, formerly a member of a California street gang called "Toonerville," advised a street gang who called themselves the "Bratz" or "Traviesos" on at least two separate occasions on how to operate their gang: once at a barbeque at Bratz member Eddie Rodriguez's house,[2] and once at a party held at the residence of another Bratz member. A jury convicted him. The trial

---

* The Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

1. At the time of McCoy's alleged advising, the statute provided that "A person who violates subsection A, paragraph 1, 2, 3 or 4 of this section for the benefit of, at the direction of or in association with any criminal street gang, with the intent to promote, further or assist any criminal conduct by the gang, is guilty of a class 2 felony." Id. § 13–2308(G). Subsection A, paragraph 3, in turn, provided that "A person commits participating in a criminal syndicate by: ... Furnishing advice or direction in the conduct ... with the intent to promote or further the criminal objectives of a criminal syndicate...." Id. § 13–2308(A)(3).

2. Testimony indicates that McCoy was dating Rodriguez's mother at the time he attended the barbeque.

judge sentenced McCoy to fifteen years of imprisonment, citing as aggravating circumstances his criminal history and that he was on parole at the time of the offense.

McCoy then filed a direct appeal in which he challenged, *inter alia,* whether the evidence offered at trial was sufficient to sustain his conviction consistent with the protections of the First Amendment. He contended that the evidence was insufficient to show that he specifically intended to further the unlawful goals of the Bratz. The Arizona Court of Appeals affirmed McCoy's conviction in an opinion. *See State v. McCoy,* 187 Ariz. 223, 928 P.2d 647 (1996). McCoy's appellate counsel next filed a petition for review with the Arizona Supreme Court, which was denied.

After applying for state post-conviction relief based on claims of ineffective assistance of counsel, McCoy timely filed a petition for writ of habeas corpus in the U.S. District Court for the District of Arizona. The district court granted McCoy's habeas petition; it found the evidence in the state court trial insufficient to convict McCoy consistent with the requirements of the First Amendment.

## II

We review a district court's decision to grant or deny habeas relief *de novo. See DePetris v. Kuykendall,* 239 F.3d 1057, 1061 (9th Cir.2001). Because McCoy's conviction implicates the First Amendment we must, as a reviewing court, conduct our own independent review of the record. In so doing, we must exercise independent judgment as to the legal issue of whether McCoy's speech and association were protected. *See Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 505–06, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *NAACP v. Claiborne Hardware,* 458 U.S. 886, 916, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982); *Eastwood v.* *Nat'l Enquirer, Inc.,* 123 F.3d 1249, 1251 (9th Cir.1997).

Because this case comes before us in a habeas posture, however, under the Antiterrorism and Effective Death Penalty Act (AEDPA), we may only grant relief if the state court's decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). McCoy challenges the Arizona court's decision only under the second prong. As we have explained, "[u]nder the 'unreasonable application' clause, a federal court should grant the writ when the state court's application of clearly established federal law is 'objectively unreasonable.' ... [W]e have held that a judgment is 'objectively unreasonable' when it is clearly erroneous...." *Shackleford v. Hubbard,* 234 F.3d 1072, 1077 (9th Cir.2000) (citations omitted). That is, McCoy's conviction must stand unless it leaves us with a " 'definite and firm conviction' that an error has been committed." *Gunn v. Ignacio,* 263 F.3d 965, 969 (9th Cir.2001) (citation omitted). *See Brooks v. N.C. Dept. of Corr.,* 984 F.Supp. 940 (E.D.N.C.1997) (In habeas proceedings under AEDPA "the court must exercise its independent judgment as to the legal issue of whether[a defendant's] words are protected by the First Amendment" but provide "relief only if the [state court's] ruling involved an unreasonable application of clearly established Supreme Court precedent.").

## III

McCoy was charged, tried, and convicted based solely on his speech to, and association with, the Bratz. As even the prosecution conceded, "This case is a little unusual in that the actual alleged criminal act is speaking to this gang group." On the other hand, however, McCoy was not

some college professor debating the finer points of social organization with a group of students; he was an admitted former gang member discussing the organization of his former gang with members of another street gang. McCoy's conviction thus raises fundamental questions about the kinds of speech which states may constitutionally punish under the First and Fourteenth Amendments.

## A

■ The opinion from McCoy's direct review in the Arizona Court of Appeals is the only written decision from the Arizona court system that attempts to square McCoy's conviction with the First Amendment; the Arizona Supreme Court "denied review of [McCoy's] direct appeal and habeas petition without comment. In this circumstance, we 'look through' the unexplained [Arizona] Supreme Court decisions to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment." *Shackleford,* 234 F.3d at 1079 n. 2.

The Court of Appeals observed that the statute under which McCoy was convicted proscribes advising or counseling a street gang only when these activities are done "with the intent to promote or further the criminal objectives of a criminal syndicate."[3] *McCoy,* 928 P.2d at 649. This is important, the court continued, because "[w]ords spoken with the intent to cause the commission of a criminal act are not protected by the First Amendment." *Id.* Because the court opined that the evidence

sufficiently demonstrated such intent, it found no First Amendment bar to McCoy's conviction:

> Contrary to appellant's assertions, the evidence showed that he did more than merely recount episodes from his California gang days and provide innocent advice on how best to organize the group. He also advised its members to continue their initiation practices, albeit on a more moderate level, and to increase their "tagging," or graffiti activities, both criminal offenses. From this, and from his prior affiliation and experience in another gang, and from his presence at [sic] least one "jumping[-]in," the jury could reasonably infer both his knowledge of this gang's felony criminal activity and his intent to promote the same.

*Id.* at 650.[4] In this, a habeas proceeding, we must measure this articulated rationale against Supreme Court precedent to determine whether McCoy's conviction was reasonable.

## B

McCoy argues that his conviction under A.R.S. § 13–2308 was unconstitutional because, at worst, his words to the gang were abstract advocacy of lawlessness not directed to inciting imminent lawless action. Thus, he concludes, they were protected under *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) and its progeny.

---

**3.** Under Arizona law, criminally assisting a criminal street gang requires that the accused both "inten[d] to promote or further the criminal objectives of a criminal syndicate" and "inten[d] to promote, further or assist any criminal conduct by the gang." A.R.S. § 13–2308(C)(3) and (F) (1993).

**4.** "Jumping people in," "jump-in," and "court-in" are all synonyms used to describe the initiation of a new gang member by current gang members (usually through physical assault). The phrases "jumping people out," "jump-out," and "court-out" refer to the process by which gang members are ejected from the gang, in a manner similar to initiation, by other gang members.

In *Brandenburg*, its seminal advocacy case, the Supreme Court held that the "mere abstract teaching" of "the moral propriety or even moral necessity for a resort to force and violence" is protected by the First Amendment unless such speech is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action."[5] 395 U.S. 444, 447–448, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Under *Brandenburg* timing is crucial, because speech must incite imminent lawless action to be constitutionally proscribable. Thus, several years later in *Hess v. Indiana*, the Court made explicit what was implicit in *Brandenburg*: a state cannot constitutionally sanction "advocacy of illegal action at some indefinite future time." 414 U.S. 105, 108, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973). If McCoy's speech truly was mere abstract advocacy of violence and lawlessness, then, his conviction involved an unreasonable application of Supreme Court precedent.

McCoy argues that the "advice" he gave to the Bratz was nothing more than abstract advocacy of an overarching gang philosophy, which lacked any specific intent to further or to promote criminal acts. If anything, McCoy contends, his speech was advocacy of lawlessness at some indefinite future time. McCoy's Opening Brief avers that

> No witness at McCoy's trial testified that McCoy ever told him or her to go out and commit a crime. No witness testified that he or she was incited by hearing McCoy's words. No evidence adduced at the trial suggested that McCoy was offering anything more than his own belief or blueprint on how a successful gang should be run.

The record bears out his assertions.

Far from demonstrating a specific intent to further illegal goals, McCoy's speech appears to fit more closely the profile of mere abstract advocacy of lawlessness.[6] The circumstances of McCoy's speech— interspersed at a barbeque and a social party, while Bratz members were drink-

---

**5.** Other decisions confirm that speech that advocates, teaches, or justifies lawlessness in an abstract way is fully protected, so long as it is not directed to inciting imminent lawless action. The protection afforded an individual's abstract advocacy of lawlessness endures even if the individual hopes that someday such lawlessness may occur. *See Noto v. United States*, 367 U.S. 290, 297, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961) (abstract "advocacy" of Communist philosophy, "even though uttered with the hope that it may ultimately lead to violent revolution, is too remote from concrete action to be regarded as ... indoctrination preparatory to action"); *see also White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (neighborhood association's publications and speech strongly opposing the conversion of a motel into a multi-family housing unit were constitutionally protected, even though the association's position, if adopted by HUD, would violate the Fair Housing Act). Only speech that is directed to inciting imminent lawless action, and likely to do so, is proscribable under *Brandenburg*.

**6.** McCoy's argument that his speech was mere abstract advocacy would, of course, be undermined if the state could prove that the speech actually caused imminent lawless action. Here, however, McCoy correctly observes that his words did not actually incite anyone to commit a crime. There is no evidence in the record that the Bratz engaged in any crime as a result of his advice. Indeed, there is no evidence that McCoy's speech played any part at all in any crime committed by the Bratz. Cynthia Felix, a Bratz member, testified that she didn't think the Bratz implemented McCoy's idea about how to court-out girls. No one testified that the Bratz took McCoy's advice about tagging up the neighborhood. And while the evidence demonstrated that members of the Bratz were involved in crimes, nothing indicates that their criminal activity was in any way inspired by or "proximate" to McCoy's speech.

ing, chatting and listening to music—made it unlikely anyone would act on it imminently. Moreover, his advice was very general. McCoy's "ideas" about "how to court people out" were abstract in that they were not aimed at any particular person or any particular time. McCoy advocated that the Bratz court-out girls in a less violent manner at some time in the future, if and when the Bratz decided to court-out one of their female members. In addition, McCoy's suggestion that the Bratz tag up the neighborhood to let their presence be known was given without any recommendation as to how or when to place the graffiti. Because McCoy's speech to the Bratz, like the protestor's speech in *Hess,* at most advocated lawlessness at some indefinite future time, and did not incite lawlessness, it was protected by the First Amendment. We therefore hold that the Arizona Court of Appeals erred in concluding otherwise.

## IV

■■■■■ The above analysis demonstrates that under *Brandenburg* and its progeny, which were decided well before McCoy's conviction became final in 1996, the Arizona Court of Appeals's conclusion that the speech was not protected "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). We recognize that, to succeed under this prong, it is "not enough that a petitioner convinces the court that he has the better of two reasonable legal arguments"; rather, we must be

left "with a firm conviction that one answer, the one rejected by the [state] court, was correct and the other, the application of the federal law that the [state] court adopted, was erroneous." *Shackleford,* 234 F.3d at 1077 (internal quotation marks omitted). Nonetheless, given the foregoing analysis, we are forced to agree that McCoy's speech, at most, constituted mere abstract advocacy of lawlessness, rather that an intentional effort to further illegal activity. We thus conclude that McCoy's conviction cannot be squared with the First Amendment as explicated by clearly established Supreme Court precedent.

## V

As the district court aptly observed, "While it may have been incredibly stupid and short-sighted for [McCoy] to have offered his opinions and experiences to a group of teenaged gangster wanna-be's, the Constitution protects even stupid speech." *McCoy,* No. CIV 98–433–TUC–WDB, slip op. at 8 (D.Ariz. Apr. 4, 2001). We are mindful of the serious problem posed by street gangs,[7] and are entirely sympathetic to the efforts of Arizona's legislature to protect its citizens from the evils gangs all too often inflict. On the record before us, however, we must conclude that the First Amendment protected McCoy's speech. To hold that McCoy's speech could be punished merely because he shared with them his prior experiences in a gang, or even advocated the propriety of gang activity generally, would be unreasonable in light of clearly established Supreme Court precedent. Indeed, McCoy's

---

7. *See, e.g.,* Silvia Perez, *Alternatives in Fighting Street Gangs: Criminal Anti–Gang Ordinances v. Public Nuisance Laws,* 13 St. Thomas L. Rev. 619, 619 (2001) (noting that "[g]ang violence continues to be a problem in today's society. Gangs have spread beyond our inner cities into this nation's rural areas, parks and streets. The United States spends

$20 billion a year treating the victims of gunshot wounds. 'Gang violence is not only tearing at our moral culture and killing our children, it's also picking our pockets.' Gangs exist in 94% of major American cities") (footnotes omitted); *see generally* Steven L. Sachs, *Street Gang Awareness: A Resource Guide for Parents and Professionals* (1997).

conviction strays dangerously close to a finding of guilt by association. Such a conviction, even in the context of a street gang, cannot be squared with the First Amendment, and thus cannot stand. *See Claiborne Hardware*, 458 U.S. at 920, 102 S.Ct. 3409; *Mitchell v. Prunty*, 107 F.3d 1337, 1342 (9th Cir.1997), *overruled on other grounds by Santamaria v. Horsley*, 133 F.3d 1242 (1998) (en banc); *see also Hill v. City of Houston*, 789 F.2d 1103, 1113 (5th Cir.1986) (explaining that "[t]he Constitution does not protect only decent, law-abiding people").

Given the stringent requirements of AEDPA, we hesitate to affirm a grant of habeas where three levels of the Arizona Court system have held a conviction proper. We reluctantly conclude, however, that this is one of the rare cases in which our review of the state court's decision leaves us with a " 'definite and firm conviction' that an error has been committed." *Gunn*, 263 F.3d at 969 (citation omitted). The district court's grant of the writ is, therefore,

**AFFIRMED.**