**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHEN P. SHOEMAKER,
*Petitioner-Appellant*,

v.

ROBERT TAYLOR, Chief Probation
Officer for the City and County of
Los Angeles,
*Respondent-Appellee*.

No. 11-56476

D.C. No.
2:07-cv-05849-
MMM-RZ

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
December 7, 2012—Pasadena, California

Filed August 6, 2013
Amended September 13, 2013

Before: Harry Pregerson, Richard A. Paez,
and Andrew D. Hurwitz Circuit Judges.

Order;
Opinion by Judge Pregerson

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging misdemeanor convictions for multiple counts of possessing and duplicating child pornography.

Petitioner contended that some of the images he possessed were innocent images of children. Applying the factors in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), the panel could not conclude that the images were protected by the First Amendment, and held that the state court was not unreasonable to determine that these images were not protected speech.

Petitioner also contended that some images were innocent when they were created but were later digitally altered, or "morphed," so that the children appear to be engaging in sexual activity. Distinguishing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (involving images of children created entirely digitally without the use of real children), the panel held that there is no clearly established Supreme Court law holding that images of real children morphed to look like child pornography constitute protected speech.

The panel further held that, although the prosecutor erred by arguing that the jury's determination could turn on the fact that otherwise innocuous images were displayed in a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

pornographic context, the error was harmless because the images in question were child pornography.

The panel also held that, even if the standard for expanding the certificate of appealability was met as to petitioner's sufficiency of the evidence claim, petitioner could not meet his burden of showing that the state court was unreasonable to deny the claim.

## COUNSEL

Michael Rubin, Altshuler Berzon LLP, San Francisco, California, for Petitioner-Appellant.

John C. Eastman, Esq., Orange, California, for Respondent-Appellee.

## ORDER

The Opinion filed on August 6, 2013 is amended as follows:

On slip opinion page 5, line 4, remove the following text:

<Other than the eight images that formed the basis of Shoemaker's child pornography convictions, the seized images were adult rather than child pornography.>

On page 5, line 4, insert the following text:

<Eight of those images formed the basis for Shoemaker's child pornography convictions.>

An amended opinion is filed concurrently with this order.

No further petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

PREGERSON, Circuit Judge:

A California jury convicted Stephen Shoemaker of eight misdemeanor counts of possession of child pornography in violation of California Penal Code § 311.11(a) and one misdemeanor count of duplicating child pornography in violation of California Penal Code § 311.3(a). Shoemaker was sentenced to 90 days in custody, 36 months probation, a $17,000 fine, and a one-year sexual compulsiveness program. He was also required to register as a sex offender for life. Shoemaker exhausted his state remedies through the filing of a direct appeal and a petition for writ of habeas corpus. Both the California Court of Appeal and the California Supreme Court issued summary denials of Shoemaker's state habeas petitions. Shoemaker then filed his federal habeas petition under 28 U.S.C. § 2254, which the district court denied.

On appeal from the district court's denial, Shoemaker argues that: (1) because six of the images at issue were not lewd, the jury erred in finding those six images to be child pornography; (2) because the remaining two images were digitally "morphed" so that the children only *appeared* to be

engaging in sexual activity, the jury erred in finding those images to be child pornography; (3) the court erred when it instructed the jury, and permitted the prosecutor to argue, that the jury could consider the context in which the images were displayed to determine whether those images were child pornography; and (4) Shoemaker's convictions were not supported by substantial evidence. We have jurisdiction under 28 U.S.C. § 2253. Constrained by the stringent standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we affirm.

## BACKGROUND

### A. Seizure of the Images

While executing a warrant to search Stephen Shoemaker's business, Redondo Beach police found eight images they suspected to be child pornography. The images were located on two computer servers. One server hosted the adult website Blowout.com ("Blowout"); the other hosted the adult website Beachbaby.com ("Beachbaby"). Shoemaker owned both websites. Additionally, as the systems operator for Blowout, Shoemaker managed content for the site and approved images for posting on the site. Shoemaker had one employee, the systems operator for Beachbaby.

In addition to Blowout and Beachbaby, Shoemaker's business hosted five other websites that also contained adult pornography. Police seized more than 3,700 photos from the hard drives at the business. Eight of those images formed the basis for Shoemaker's child pornography convictions.

Six of the eight images (Exhibits 3, 5, 7, 8, 9, and 12) were found on the Beachbaby website. The remaining two

images (Exhibits 13 and 14) were not posted on any website but instead were found in a subdirectory of the Beachbaby server named "shoe." Copies of these two images were also found on the Blowout server in a subdirectory named "shoe."

## B. The Images

Shoemaker contends that two of the images, Exhibits 8 and 14, were innocent images of children digitally altered, or "morphed," so that the children *appear* to be engaging in sexual activity. Morphed images are often created by superimposing images of real children's heads on images of bodies of adults or bodies of other children. The following description of the images (Exhibits 3, 5, 7, 8, 9, 12, 13, and 14) are taken from the Appellate Division of the Superior Court of Los Angeles County's Memorandum Judgment.

- Exhibit 3 "portrays a nude girl, from the knees up, sitting on the edge of a sailboat. Her breasts and pubic hair are visible."

- Exhibit 5 "is a full-length portrayal of a nude girl sitting astride a seesaw. Her breasts and pubic hair are visible."

- Exhibit 7 "portrays a nude girl, from the knees up, sitting on the edge of the bathtub, slightly wet with soap suds. She is facing the viewer and her breasts and pubic area are visible."

- Exhibit 8 "portrays a nude girl and a nude boy, from the knees up. The girl's breasts and pubic area are visible, and the boy's penis and testes are visible. The boy is leaning back and the girl is leaning towards the

boy, with one arm behind his head." Shoemaker contends that this image was morphed.

- Exhibit 9 "is a full-length portrayal of six nude girls standing before a crowd. All of the girls' breasts and pubic areas are visible, with varying amounts of pubic hair."

- Exhibit 12 "portrays a nude girl, from the mid-thigh up, standing in front of a shower attachment, with a detachable shower head aiming running water at her body. Her breasts and pubic area are visible."

- Exhibit 13 "is a full-length portrayal of a nude girl, holding a large piece of fabric behind her back, with a flower in her hair. Her breasts and pubic area are visible."

- Exhibit 14 "portrays two nude boys and one nude girl on what appears to be a bed. The girl is lying on her back, spread-eagled, and her breasts and genitals are exposed. One boy is kneeling over her and his erect penis is in the girl's mouth. The other boy is on his knees, holding the girl's feet, and his erect penis is penetrating the girl." Shoemaker contends that this image was also morphed.

## C. State Court Criminal Proceedings

Shoemaker was charged with possession of child pornography under California Penal Code § 311.11 and duplication of child pornography under California Penal Code

§ 311.3.**[1]**　　At trial, Shoemaker sought a directed verdict, which the trial court denied.　Shoemaker argued that the images in question were innocuous photographs at the time they were *created* (at nudist camps and the like), and that the *display* of such images on a pornographic website could not convert them into child pornography.　The trial judge rejected this argument and stated:　"The prosecution will be able to argue that [a] photograph [that is alleged to be child pornography] included in the other photographs on the same [pornographic] website . . . imbues it with the essence of the violation . . . .　To this court's mind, it is the use of the photograph. . . .　You can take an innocuous photograph and make it illegal.　I can take a questionable photograph and make it legal.　It's all in the use of the photograph."

The trial court then instructed the jury that in determining whether an image met the statutory definition of child pornography, it could consider five factors:

---

**[1]** California Penal Code § 311.11 makes it a crime for a person to "knowingly possess[] or control[] any matter, representation of information, data, or image . . . the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4."

California Penal Code § 311.4(d) defines "sexual conduct" as including actual or simulated "sexual intercourse" and "exhibition of the genitals or pubic or rectal area *for the purpose of sexual stimulation of the viewer.*" (emphasis added).

California Penal Code § 311.3 makes it a crime to "knowingly develop[], duplicate[], print[], or exchange[] any representation of information, data or image . . . that depicts a person under the age of 18 years engaged in an act of sexual conduct."　This section defines "sexual conduct" in substantively the same way as § 311.4.

(1) "whether the focal point is on the child's genitalia or pubic or rectal area"; (2) "whether the setting is sexually suggestive; that is, in a place or pose generally associated with sexual activity"; (3) "whether the child is in an unnatural pose, or inappropriate attire considering the age of the child"; (4) "whether the child is fully or partially clothed or nude"; and (5) "whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity."

In determining whether there has been a prohibited exhibition of a minor child's genitals, pubic, or rectal area based upon the above factors, it is not necessary to conclude that all factors 1 through 5 are present.[2]

At closing, the trial court allowed the prosecutor to argue that the placement of six of the images on Shoemaker's adult pornography website, Beachbaby, was evidence that those images were child pornography. After addressing the allegedly morphed images that more obviously showed sexual activity (Exhibits 8 and 14), the prosecutor turned to the other six images. He began by stating:

So when my family and I visit the nudist camp, and my kids are getting out of the pool, and we are having a great time, and I click, click, click, and I take some pictures of them and I send them to Photomat. And I get them

---

[2] These five factors were established in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).

developed, and they come back and someone gets a hold of them like Mr. Shoemaker or [his co-defendant] and they put them on their website among other pictures, other pornographic pictures of adults, children, animals, people drinking urine, *it is that context*, ladies and gentlemen, of my child, anyone's child on the bear skin rug in the bathtub with the soapy hair, with the little brother, the little sister laughing in the bathtub naked. *It is when you see that image in the context of how it appears when a person looks at that photo placed amongst others by [co-defendant] and Mr. Shoemaker that make that image the exhibition of the genitals for the purpose of stimulation of the viewer.* (emphasis added)

The prosecutor then repeated to the jury all five factors from the instructions, stating: "Those are the factors that you should be looking at, ladies and gentlemen, when deciding these images in the context in which we find them . . . meet the requirement of an exhibition of the genitals for the purposes of sexual stimulation of the viewer." The prosecutor also repeatedly emphasized, however, that six of the images were found in the context of Beachbaby, an adult pornographic website. The prosecutor explained that, even assuming the nude photographs were not child pornography when viewed in isolation, their placement on the Beachbaby website was "for the purpose of stimulation of the viewer," and thus evidence of child pornography under California law. Regarding one of the images, the prosecutor argued:

Maybe there is nothing particular[ly] odd about this photograph. It is in a nudist camp and everybody is walking around naked. The child is just posing for the camera as many kids may do. Again, it is the placing in the context of the website. And interestingly enough this one is, again, on the Teens section of Beachbaby.com.

Shoemaker was convicted of eight counts of misdemeanor possession of child pornography based on all eight images, and one count of duplication based on Exhibits 13 and 14, which were copied from the Beachbaby server to the Blowout server. Shoemaker was sentenced to 90 days in custody, 36 months probation, a $17,000 fine, and a one-year sexual compulsiveness counseling program. Shoemaker was also required to register as a sex offender for life.

### D.  Shoemaker's Appeal & Habeas Petition

Shoemaker appealed to the Appellate Division of the Superior Court of Los Angeles County, which affirmed the judgment. Shoemaker filed a petition for writ of habeas corpus with the California Court of Appeal, which issued a summary denial. Shoemaker then filed a habeas petition with the California Supreme Court, which also issued a summary denial.

In September 2007, Shoemaker filed his federal habeas petition. The district court rejected the same arguments that Shoemaker raises here and denied his petition.

## STANDARD OF REVIEW

We review a district court's denial of a petition for writ of habeas corpus *de novo*. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc).

In the case of a habeas petition implicating the First Amendment, we first "must, as a reviewing court, conduct our own independent review of the record. In so doing, we must exercise independent judgment as to the legal issue of whether [the habeas petitioner]'s speech and association were protected." *McCoy v. Stewart*, 282 F.3d 626, 629 (9th Cir. 2002) (conducting an independent review prior to conducting a habeas analysis in a habeas claim implicating the First Amendment).

Under AEDPA, we may grant habeas relief on a claim that was adjudicated on the merits in state court proceedings only where the state court's decision was: (1) "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under § 2254(d)(1), clearly established Federal law consists of "the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Section 2254(d)(1)'s "unreasonable application" applies where, as here, there have only been summary denials of habeas relief by the state courts. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

**DISCUSSION**

Shoemaker argues that it was contrary to, or an unreasonable application of, clearly established federal law for the state court to uphold: (1) the jury's determination that Exhibits 3, 5, 7, 9, 12, and 13 were child pornography, where those images were innocuous portrayals of nude children; (2) the jury's determination that Exhibits 8 and 14 were child pornography, where those images were morphed; (3) the jury instructions and the prosecutor's argument that allowed the jury to consider the context in which the images were displayed in determining whether the images were child pornography; and (4) the sufficiency of the evidence supporting his convictions. Although we agree that the prosecutor's argument was error, constrained by AEDPA, we conclude that the error was harmless, and we otherwise reject Shoemaker's remaining arguments.

**A.  Nude Images—Exhibits 3, 5, 7, 9, 12, and 13**

First, Shoemaker argues that Exhibits 3, 5, 7, 9, 12, and 13 were simply innocent pictures of nude children, and thus protected speech. Upon independent review of the images, *McCoy*, 282 F.3d at 629, we cannot conclude that these images are protected by the First Amendment. Therefore, we hold that the state court was not unreasonable to determine that Exhibits 3, 5, 7, 9, 12, and 13 were not protected speech.

The Supreme Court has clearly established that not all images of nude children amount to child pornography because "nudity, without more[,] is protected expression." *New York v. Ferber*, 458 U.S. 747, 765 n.18 (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 112 (1990). "For example, a family snapshot of a nude child bathing presumably would

not be criminal." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (internal quotation omitted). The Supreme Court has, however, upheld statutes criminalizing the possession of "lewd" or "lascivious" depictions of nude children. *United States v. X-Citement Video*, *Inc.*, 513 U.S. 64 (1994) (holding that "lascivious" and "lewd" are indistinguishable and that federal child pornography statute 18 U.S.C. § 2252 criminalizing the possession of images depicting "lascivious exhibition of the genitals" was not vague or overbroad); *Osborne*, 495 U.S. at 112–13; *Ferber*, 458 U.S. at 765 (upholding New York law prohibiting images amounting to a "lewd exhibition of the genitals").

We have held that "'lascivious' is a 'commonsensical term' and that whether a given photo is lascivious is a question of fact. . . . [W]hether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make." *United States v. Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990) (citations omitted). To determine whether depictions of nude children are "lascivious," "lewd," or "for the purpose of sexual stimulation of the viewer," and thus child pornography, our court and other circuits have relied on the *Dost* factors, set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). *See, e.g.*, *Hill*, 459 F.3d at 972; *Doe v. Chamberlin*, 299 F.3d 192, 196 (3d Cir. 2002); *United States v. Brunette*, 256 F.3d 14, 17–18 (1st Cir. 2001); *United States v. Boudreau*, 250 F.3d 279, 282–83 (5th Cir. 2001); *United States v. Moore*, 215 F.3d 681, 686–87 (7th Cir. 2000). The *Dost* test sets forth six factors for determining lewdness or lasciviousness:

(1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

636 F. Supp. at 832. We have stated that "the [*Dost*] factors are neither exclusive nor conclusive" but rather "general principles as guides for analysis" and "a starting point" in determining whether an image constitutes child pornography. *Hill*, 459 F.3d at 972.

Considering these factors on de novo review of the images, we conclude that the six images that Shoemaker claims are innocuous nude photographs are in fact child pornography. We find, just as the district court found after independently reviewing the photographs, that several of the

*Dost* factors are present in Exhibits 3, 5, 7, 9, 12, and 13, including: nudity, expressions of sexual coyness, focus on genitals and pubic areas, and girls "arrayed for the sexual stimulation of the viewers." Therefore, the state court's determination was not unreasonable.

Indeed, the jury in Shoemaker's case was instructed to consider five of the six *Dost* factors to determine whether the images were "exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer" under California Penal Code § 311.11. Given the presence of several *Dost* factors in Exhibits 3, 5, 7, 9, 12, and 13, the state court did not unreasonably apply *Ferber* or *Osborne* when it rejected Shoemaker's argument that the images were innocuous nude photographs.

### B. Morphed Images—Exhibits 8 and 14

Shoemaker argues that the jury wrongly found Exhibits 8 and 14 to be child pornography because those images were morphed, and the state court unreasonably applied clearly established federal law by failing to afford him habeas relief on this ground.

Upon an independent review of the record, it is clear that the images depict children engaging in sexually explicit behavior and would thus not be protected by the First Amendment if not "morphed." Irrespective of whether the images are in fact morphed, Shoemaker's claim fails because there is no clearly established Supreme Court law holding that images of real children morphed to look like child pornography constitute protected speech.

Morphed images of children engaged in sexual activity directly implicate the interest of protecting children from harm, an interest the Supreme Court deemed compelling in *Ferber*. There, the Court explained that states have a compelling interest in "safeguarding the physical and psychological well-being of a minor" and the "prevention of sexual exploitation and abuse of children." 458 U.S. at 756–57 (internal quotation omitted). The Court further noted that actual child pornography is "intrinsically related to the sexual abuse of children" because it is "a permanent record of the children's participation and *the harm to the child is exacerbated by [its] circulation*." *Id*. at 759 (emphasis added).

Morphed images are different from traditional child pornography because the children depicted may not have been sexually abused or physically harmed during the images' production. But, morphed images are like traditional child pornography in that they are records of the harmful sexual exploitation of children. The children, who are identifiable in the images, are violated by being falsely portrayed as engaging in sexual activity. As with traditional child pornography, the children are sexually exploited and psychologically harmed by the existence of the images, and subject to additional reputational harm as the images are circulated.

For this reason, at least three other circuits have held that morphed images of children engaging in sexual activity constitute unprotected speech. *See Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012); *United States v. Hotaling*, 634 F.3d 725 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 843 (2011); *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005). In *Hotaling*, the Second Circuit explained that the "underlying inquiry is

whether an image of child pornography implicates the interests of an actual minor." 634 F.3d at 729. The court held that "[s]exually explicit images that use the faces of actual minors are not protected expressive speech under the First Amendment" because, when a minor's face is used, her interests are implicated and she is placed "at risk of reputational harm and . . . psychological harm." *Id.* at 730. In *Bach*, the Eighth Circuit similarly reasoned,

> Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed.

400 F.3d at 632.

As the foregoing underscores, the Supreme Court has not clearly established that images morphed to depict children engaged in sexual activity are protected by the First Amendment. Indeed, the Court has expressly left open the question whether morphed images can constitute child pornography. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 242 (2002). In *Free Speech Coalition*, the Court held that virtual child pornography—images of naked children created entirely digitally without the use of any real children—was protected speech. *Id.* at 239. The Court thus declared unconstitutional those portions of the federal Child Pornography Protection Act prohibiting such pornography. *Id.* The Court, however, expressly declined to rule on the section of the Act that covered morphed images: "Although morphed images may fall within the definition of virtual child

pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*. Respondents do not challenge this provision, and we do not consider it." *Id.* at 242. In fact, by stating that morphed images are "closer to the images in *Ferber*," the Court noted that morphed images were more likely to be considered unprotected speech like the actual child pornography at issue in *Ferber*, rather than protected speech.

Second, we are unpersuaded by Shoemaker's argument that it is clearly established that all speech is protected by the First Amendment unless the Supreme Court has expressly carved out an exception from First Amendment protection. Specifically, Shoemaker contends that unless and until the Court determines that morphed images of children engaging in sexual activity are unprotected, the law is clearly established that such images are protected. This argument rests on an overly narrow and static conception of categories of speech.

Contrary to Shoemaker's argument, if speech does not squarely fall within a category of unprotected speech, that speech's protection under the First Amendment is not clearly established. Rather, the "appellate court has an obligation to make an independent examination of the whole record" to evaluate whether the speech is protected or whether it actually falls into a category of unprotected speech and thus may be lawfully restricted under the First Amendment. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (internal quotation omitted); *Ferber*, 458 U.S. at 774 n.28. During this independent examination, the court checks whether the speech falls within any unprotected category and, if so, "confine[s] the perimeters of [the] unprotected category within acceptably narrow limits in an effort to ensure that

protected expression will not be inhibited." *Bose*, 466 U.S. at 505. Through the independent examination process, the parameters of unprotected speech categories are continually being defined. For this reason, there is no need for the Court to carve out a separate exception for morphed images of children engaging in sexual activity in order to hold that such speech is unprotected. Instead, on independent review, the Court may decide that such speech is unprotected as a part of an existing category of unprotected speech like child pornography.

Therefore, we reject Shoemaker's invitation to invert AEDPA's standard of review in the First Amendment context. In sum, we conclude that the Supreme Court has not clearly established that morphed images are protected by the First Amendment. Accordingly, we hold that under § 2254(d), the state court reasonably rejected Shoemaker's claim that Exhibits 8 and 14 cannot be considered pornographic.

## C. Context in Which the Images Were Shown

Shoemaker contends that the court erred when it allowed the jury to consider the context in which the images were displayed in determining whether the images were child pornography. Specifically, Shoemaker alleges error in the jury instructions, which allowed the jury to consider the "setting" of the images, and the prosecutor's arguments regarding the adult website on which six of the images were displayed. Shoemaker argues that *Free Speech Coalition* established that context is irrelevant in determining whether an image is child pornography. Shoemaker misreads *Free Speech Coalition*.

In *Free Speech Coalition*, the Supreme Court struck down a federal law that banned materials marketed in such a way that "conveys the impression" that such materials depict minors engaged in sexually explicit conduct. *Id.* at 257. The Court was concerned that "[e]ven if a film contains no sexually explicit scenes involving minors, it could be treated as child pornography if the title and trailers convey the impression that [such] scenes would be found in the movie." *Id.* The Court found the law overbroad because its analysis would not "depend principally upon the content of the prohibited work" but would instead "turn[] on how the speech is presented, not on what is depicted." *Id.* The Court did not state, however, that the context in which an image is displayed may never be considered in determining whether an image is child pornography. In fact, the Court noted that how an image is pandered may be relevant in determining whether particular materials are obscene, citing *Ginzburg v. United States*, 383 U.S. 463, 474 (1966). 535 U.S. at 257–58. Thus, the Court left open the question whether the context in which an image is displayed may be considered as a factor in a child pornography determination.

However, *Free Speech Coalition* does tell us that a child pornography determination may not "turn on" the context in which an image is presented. We read "turn on" to mean to "depend principally on." In *Free Speech Coalition*, the Court rejected the government's argument that "the determination [of child pornography] would still *depend principally upon* the content of the prohibited work." *Id.* at 257 (emphasis added). The Court instead found that "*[t]he determination turns on how the speech is presented, not what is depicted*" and therefore held that the challenged law was unconstitutional. *Id.* (emphasis added). The juxtaposition in the opinion between "depend principally upon" and "turns

on" supports our view that the two phrases are treated as synonymous.  Thus, we read *Free Speech Coalition* as clearly establishing that the context of how an image is presented may not be the principal consideration in determining whether that image is child pornography.

We now turn to whether the state court unreasonably applied *Free Speech Coalition* in rejecting Shoemaker's habeas claim regarding the jury instructions. The instructions allowed the jury to consider "[w]hether the 'setting' was sexually suggestive."   The jury may have understood "setting" to mean the backdrop depicted within the four corners of the photograph—for example, the sailboat in Exhibit 1 or the bathtub in Exhibit 7.  This would make "setting" a factor relating to the content of the images rather than to the context in which they were displayed.  Therefore, we cannot say that the state court was unreasonable in finding that the jury instructions, which tracked the widely-used *Dost* factors, were proper.

The state court's decision upholding the prosecutor's closing argument presents a different question.   The prosecutor repeatedly emphasized the context of the adult Beachbaby website on which six of the pictures were displayed.  At the outset of his closing, the prosecutor argued that when someone like Shoemaker gets his hands on hypothetical innocent photos of someone's children at a nudist camp and:

> put[s] them on [his] website among other pictures, other pornographic pictures . . . *it is that context*, ladies and gentlemen, of my child, anyone's child on the bear skin rug in the bathtub with the soapy hair, with the little

brother, the little sister laughing in the bathtub naked. *It is when you see that image in the context of how it appears when a person looks at that photo placed amongst others by [co-defendant] and Mr. Shoemaker that make that image the exhibition of the genitals for the purpose of stimulation of the viewer.* (emphasis added).

He said of each image in various formulations:

> Let's assume for a minute that this image was taken at a nudist camp. Perfectly natural behavior for a nudist camp. Naturalist. When you take an image of a child out of their setting and put that into the setting of Beachbaby.com, of Blowout.com, this image is designed to stimulate the sexual desires of the viewer.

And referring to another image, he said:

> Maybe there is nothing particular[ly] odd about the photograph. It is in a nudist camp and everybody is walking around naked. The child is just posing for the camera as many kids may do. Again, it is the placing in the context of the website. And interestingly enough this one is, again, on the teens section of Beachbaby.com.

In effect, the prosecutor argued that even if the nude images of children at issue here were not child pornography before they were on the website, they became child pornography in

the context in which they were placed. In making this argument, the prosecutor did exactly what *Free Speech Coalition* forbid—he argued to the jury that its determination could "turn on" the fact that otherwise innocuous images were displayed in a pornographic context. Under clearly established Supreme Court precedent, the prosecutor erred.

Nonetheless, we hold that the prosecutor's error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (holding that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht,* whether or not the state appellate court recognized the error"). Here, as we have already independently determined, the images in question were child pornography and several of the *Dost* factors were present in each. Each image presented a nude girl, a factor that the prosecutor also emphasized throughout his closing argument. Although we hold that portions of the prosecutor's argument were erroneous, the prosecutor also repeated the instructions regarding the five factors that the jury should consider in determining whether the images were child pornography. In so doing, the whole of the prosecutor's argument made the jury aware that its decision should rest on multiple factors.

Thus, although the state court unreasonably applied *Free Speech Coalition* when it rejected Shoemaker's prosecutorial error argument, we reject Shoemaker's claim because the error was harmless.

### D.  Sufficiency of the Evidence

Lastly, Shoemaker requests that we expand the certificate of appealability to consider the issue whether his convictions were based on insufficient evidence and thus a violation of the Due Process Clause.  A conviction based on insufficient evidence violates a defendant's due process rights.  *In re Winship*, 397 U.S. 358 (1970).  Evidence is insufficient if, viewed in the light most favorable to the prosecution, no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The standard for expanding a certificate of appealability is low.  A certificate of appealability should issue if "reasonable jurists could debate whether" (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted); *see also Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

Even if the standard to expand the certificate of appealability is met, Shoemaker cannot meet his burden to show that the state court was unreasonable to decide that sufficient evidence existed to support his convictions.  First, the state court was not unreasonable when it rejected Shoemaker's claim that insufficient evidence existed to support his conviction for knowingly possessing or controlling child pornography.  Shoemaker owned the Beachbaby and Blowout websites; the servers for these websites were located in his business office; two of the images were in a folder titled "shoe," which are the first four letters of Shoemaker's last name; the "shoe" folder also

contained images of Shoemaker, his friends, and his residence; and the systems operator for Beachbaby was Shoemaker's sole employee. In light of this evidence, the state court did not unreasonably apply *Jackson v. Virginia* in rejecting Shoemaker's habeas claim that insufficient evidence existed to support his convictions for possession of child pornography.

Nor was the state court objectively unreasonable to reject Shoemaker's claim that insufficient evidence existed to support his conviction for duplicating child pornography (based on Exhibits 13 and 14). The copies of these images were located in a folder on the Blowout server titled "shoe"; the "shoe" folder also contained images of Shoemaker, his friends, and his residence; the user "Staff" was moving Shoemaker's personal images around on the same day the copy of the "shoe" folder appeared on the Blowout server; and Shoemaker was the systems operator for the Blowout server. Given this evidence, the state court did not unreasonably apply *Jackson v. Virginia* in rejecting Shoemaker's claim that insufficient evidence existed to support his conviction for duplicating child pornography.

## CONCLUSION

For the reasons set forth in this opinion, Shoemaker is not entitled to relief. Although the state court unreasonably applied *Free Speech Coalition*, the error was harmless. The district court's denial of Shoemaker's petition for writ of habeas corpus is therefore **AFFIRMED**.